Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Danielle S. Futterman (DY 4228)
dfutterman@ipcounselors.com
Gabriela N. Nastasi
gnastasi@ipcounselors.com
Grace A. Rawlins
grawlins@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 1250
New York, NY 10165
Telephone:    (212) 292-5390
Facsimile:    (212) 292-5391
*Attorneys for Plaintiffs*
*Spin Master Ltd. and*
*Spin Master Toys UK Limited*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SPIN MASTER LTD. AND SPIN MASTER TOYS UK LIMITED, <br><br> *Plaintiffs* <br><br> v. <br><br> AGANV, BABELEMI STORE, BABY ACCESSORIES BABY ACCESSORIES STORE STORE, CAROL MONKEY BABY OFFICIAL STORE, CHILDHOOD TOY STORE, CHILDHOODMEMORY STORE, CUBEIN STORE, CUBEKK STORE, DROXMA STORE, FASHIONISTAR STORE, GAME PARK STORE, HELLOCUBE STORE, JENEEY INTERNATIONAL TRADE CO., LTD., JINHUA YIFAN ARTS AND CRAFTS CO., LTD., KIDLOVE STORE, LAZA TOYS STORE, LEFT MAGIC OFFICIAL STORE, LITTLE PRINCE STORE, MODERNBABY STORE, MOMMY BABY ESHOPPING STORE, NINGBO ROYAL IMPORT AND EXPORT CO., LTD., PANDA HOME STORE, PUZZLES STORE, QY TOYS STORE, SAIKER STORE, SHANTOU TOMNESS | CIVIL ACTION No. <br><br> **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' *EX PARTE* APPLICATION FOR 1) A TEMPORARY RESTRAINING ORDER; 2) ORDER RESTRAINING MERCHANT STOREFRONTS AND DEFENDANTS' ASSETS WITH THE FINANCIAL INSTITUTIONS; 3) AN ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE; 4) ORDER AUTHORIZING BIFURCATED AND ALTERNATIVE SERVICE AND 5) ORDER AUTHORIZING EXPEDITED DISCOVERY** <br><br> <u>**FILED UNDER SEAL**</u> |

TRADING CO., LTD., SHOP1341109 STORE, SHOP2947271 STORE, SHOP910554234 STORE, SMILING TOY STORE, TAOAO TQQ BABY STORE, TOY ROOM AND BABY STORE, TOYSHOUSE STORE, WZ PUZZLES STORE, YIWU JIANYU IMP & EXP CO., LTD., YIWU JIXU IMPORT AND EXPORT CO., LTD., YIWU TUOYING TECHNOLOGY CO., LTD. and ZCUBE OFFICIAL                                    STORE,

*Defendants*

# I.    TABLE OF CONTENTS

I.      TABLE OF CONTENTS............................................................................................... i

I.      INTRODUCTION ..................................................................................................... 1

II.     STATEMENT OF RELEVANT FACTS .................................................................. 2

III.    ARGUMENT ............................................................................................................ 3

    **A.**    **THIS COURT HAS PERSONAL JURISDICTION OVER
DEFENDANTS .......................................................................................... 3**

        1.    Defendants are Subject to Personal Jurisdiction Under N.Y.
C.P.L.R. § 302(a)(1) ..................................................................... 3

        2.    Exercising Personal Jurisdiction Over Defendants Comports with
Due Process.................................................................................... 9

    **B.**    **PLAINTIFFS Are ENTITLED TO AN *EX PARTE* TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION................... 9**

        1.    Plaintiffs are Likely to Prevail on the Merits of Their Lanham Act
Claims ......................................................................................... 11

        2.    Plaintiffs are Likely to Prevail on Their State Law Claims ..................... 12

        3.    Plaintiffs are Entitled to a Presumption of Irreparable Harm ................... 12

        4.    The Balance of Hardships Favors Plaintiffs ............................................. 13

        5.    Enjoining Defendants from Using the Rubik's Cube Marks Will
Serve the Public Interest .............................................................. 13

    **C.**    **PLAINTIFFS are ENTITLED TO AN ORDER 1) PREVENTING
THE FRAUDULENT TRANSFER OF ASSETS AND 2) FREEZING
DEFENDANTS' MERCHANT STOREFRONTS ......................................... 14**

        1.    Defendants' Assets Must be Frozen ....................................................... 14

        2.    Defendants' User Accounts and Merchant Storefronts Must be
Frozen ......................................................................................... 16

    **D.**    **PLAINTIFFS are ENTITLED TO AN ORDER AUTHORIZING
BIFURCATED AND ALTERNATIVE SERVICE OF PROCESS BY
ELECTRONIC MEANS ............................................................................ 16**

        1.    Regardless of Whether the Hague Is Applicable, Alternative
Service via Electronic Means Is Necessary and Proper Under the
Circumstances .............................................................................. 17

            a)    The Hague Is Inapplicable Because Certain Defendants'
Addresses Are Unknown .................................................... 17

        b)    Service on Defendants Is Permissible Under Fed. R. Civ. P. 4(f)(3) ............................................................................................ 22

    2.    Service by Electronic Means Comports with Due Process ...................... 29

    3.    Epstein Drangel's Prior Hague Service Attempts Support the Propriety of Alternative Service Under the Circumstances ..................... 31

**E.    DEFENDANTS ARE PROPERLY JOINED IN THIS ACTION PURSUANT TO FED. R. CIV. P. 20(A)(2) ...................................... 32**

**F.    PLAINTIFFS are ENTITLED TO AN ORDER AUTHORIZING EXPEDITED DISCOVERY ............................................................. 34**

**G.    PLAINTIFFS' REQUEST FOR A SECURITY BOND IN THE AMOUNT OF $5,000 IS ADEQUATE ............................................. 34**

IV.    CONCLUSION ............................................................................................. 35

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*A.I.A. Holdings, S.A. v. Lehman Bros.*, No. 97-CV-4978 (LMM), 1998 U.S. Dist. LEXIS 4175, (S.D.N.Y. April 1, 1998)........................................................................... 33

*Advanced Access Content Sys. Licensing Adm'r, LLC v. Shen*, No. 14 Civ. 1112 (VSB), 2018 U.S. Dist. LEXIS 169603 (S.D.N.Y. Sep. 30, 2018)........................................ 18, 29

*Advanced Portfolio Techs., Inc. v. Advanced Portfolio Techs., Ltd.*, No. 94 Civ. 5620 (JFK), 1994 U.S. Dist. LEXIS 18457 (S.D.N.Y. Dec. 28, 1994). ................................... 34

*Aircraft Engine Lease Finance, Inc. v. Plus Ultra Lineas Aereas, S.A.*, 21 Civ. 1758, 2021 WL 6621578 (S.D.N.Y. Apr. 23, 2021)...................................................... 26

*Allstar Marketing Group, LLC v. 545756338, et al.*, 19-cv-4209-KPF (S.D.N.Y. May 9, 2019) ......................................................................................................... 6

*Allstar Marketing Group, LLC v. activate2011store, et al.*, 19-cv-4204-KPF (S.D.N.Y. May 9, 2019) ................................................................................................ 6

*Allstar Marketing Group, LLC v. Alice Wonder Household (Shanghai) Co., Ltd.*, 19-cv-4208-KPF (S.D.N.Y. May 9, 2019) ................................................................... 6

*Allstar Marketing Group, LLC v. Learns babyshop, et al.*, 19-cv-4211-KPF (S.D.N.Y. May 9, 2019) ................................................................................................ 6

*Anova Applied Elecs., Inc. v. Hong King Grp., Ltd.*, 334 F.R.D. 465 (D. Mass. 2020) .............. 28

*Asia Cube Energy Holdings, LTD v. Inno Energy Tech Co.*, No. 20-cv-6203 (AJN), 2020 U.S. Dist. LEXIS 148012 (S.D.N.Y. Aug. 17, 2020) ...................................... 26

*Audiovox Corp v. S. China Enter., Inc.*, 2012 U.S. Dist. LEXIS 104656 (S.D.N.Y. Jul. 26, 2012) ......................................................................................................... 6

*AW Licensing, LLC v. Bao*, No. 15- CV-1373, 2015 U.S. Dist. LEXIS 177101 (S.D.N.Y. Apr. 1, 2015) ........................................................................................... 1, 16

*Ayyash v. Bank Al-Madina*, 233 F.R.D. 325 (S.D.N.Y. 2005) ...................................... 34

*Balenciaga Am., Inc. v. Dollinger*, No. 10 Civ. 2912 (LTS), 2010 U.S. Dist. LEXIS 107733 (S.D.N.Y. Oct. 8, 2010) .................................................................. 14

*Bandyopadhyay v. Defendant 1*, No. 22-cv-22907-BLOOM/Otazo-Reyes, 2022 U.S. Dist. LEXIS 212221 (S.D. Fla. Nov. 22, 2022) ........................................................ 28

*Best Van Lines, Inc. v. Walker*, 490 F.3d 239 (2d Cir. 2007) ........................................ 3, 4, 8, 9

*Best Van Lines, Inc. v. Walker*, No. 03 Civ. 6585 (GEL), 2004 U.S. Dist. LEXIS 7830 (S.D.N.Y. May 4, 2004)................................................................................ 8

*Boschetto v. Hansing*, 539 F.3d 1011 (9th Cir. 2008) ................................................. 7

*Broad. Music, Inc. v. Prana Hosp.*, Inc., 158 F. Supp. 3d 184 (S.D.N.Y. 2016) ........................ 13

*Burberry Ltd., et al., v. Burberry–Scarves.com, et al.*, No. 10 Civ. 9240 (TPG) (S.D.N.Y. Dec. 29, 2010) ........................................................................................................... 19

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (U.S. 1985) .......................................................... 9

*Calder v. Jones*, 465 U.S. 783 (1984) .......................................................................................... 9

*Cartier v. Seah LLC*, 598 F. Supp. 2d 422 (S.D.N.Y. 2009) ......................................................... 6

*Chanel Inc. v. Cui*, No. 10 Civ. 1142 (PKC) (S.D.N.Y. May 3, 2010) ........................................ 19

*Chanel, Inc. v. Handbagstore*, No. 20-CV-62121-RUIZ/STRAUSS, 2021 WL 3060329 (S.D. Fla. June 30, 2021) ................................................................................................. 27

*Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158 (2d Cir. 2010).............................. 4, 5, 6

*Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549 (S.D.N.Y. 2000)..................................... 4

*Dama S.P.A. v. Doe*, No. 15-cv-4528 (VM), 2015 U.S. Dist. LEXIS 178076 (S.D.N.Y. June 12, 2015) ................................................................................................................ 16

*Dama S.P.A. v. Does*, No. 15 Civ. 4528 (RJS), 2015 U.S. Dist. LEXIS 178076 (S.D.N.Y. June 15, 2015) ................................................................................................................ 19

*Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975 (2d Cir. 1996)...................................................... 34

*Doe v. Hyassat*, 342 F.R.D. 53 (S.D.N.Y. 2022) ........................................................................ 28

*Elsevier, Inc. v. Siew Yee Chew*, 287 F. Supp. 3d 374 (S.D.N.Y. 2018) ..................................... 23

*Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458 (S.D.N.Y. 2008)................... 3

*EnviroCare Techs., LLC v. Simanovsky*, No. 11-CV-3458(JS)(ETB),2012 U.S. Dist. LEXIS 78088 (E.D.N.Y. June 4, 2012) ...................................................................... 5, 6, 7

*Equipav S.A. Pavimentação, Engenharia e Comercia Ltda. v. Bertin*, No. 22-CV-04594 (PGG), 2022 WL 2758417 (S.D.N.Y. July 14, 2022) ................................................ 25, 27

*F.T.C. v. Pecon Software Ltd.*, No. 12-cv-7186 (PAE), 2013 U.S. Dist. LEXIS 111375 (S.D.N.Y. Aug. 7, 2013) ................................................................................................ 28

*Federal Express Corp. v. Federal Espresso, Inc.*, 201 F.3d 168 (2d Cir. 2000))........................ 11

*Fendi Adele S.R.L. v. Filene's Basement, Inc.*, 696 F. Supp. 2d 368 (S.D.N.Y. 2010) ............... 12

*FoxMind Canada Enterprises Ltd. v. Abctec, et al.*, No. 21 Civ. 5146 (KPF) (S.D.N.Y. July 14, 2022)........................................................................................................... 19, 25

*Golden Goose Deluxe Brand v. Aierbushe et al.*, No. 19-cv-2518 (VEC), 2019 U.S. Dist. LEXIS 84639 (S.D.N.Y. May 3, 2019) ........................................................................... 33

iv

*Grand v. Schwartz*, No. 15 Civ. 8779, 2016 U.S. Dist. LEXIS 61606 (S.D.N.Y. May 1, 2016) .................................................................................................................... 5

*Grp. One Ltd. v. GTE GmbH*, 523 F. Supp. 3d 323 (E.D.N.Y. 2021) .......................................... 28

*Gucci Am. v. Bank of China*, 768 F.3d 122 (2d Cir. 2014)........................................................... 15

*Gucci Am., Inc. v. Weixing Li*, 135 F. Supp. 3d 87 (S.D.N.Y. 2015) ...................................... 4, 16

*Gucci America, Inc., et al v. Alibaba Group Holding LTD, et al*, No. 1:15-cv-03784 (PKC) (S.D.N.Y. June 23, 2015) .................................................................................... 1

*Hangzhou Chic Intelligent Tech. Co. v. P'ships & Unincorporated Ass'n Identified on Schedule A*, No. 20 C 4806, 2021 WL 1222783 (N.D. Ill. Apr. 1, 2021)......................... 27

*Hsin Ten Enter. USA, Inc. v. Clark Enters.*, 138 F. Supp. 2d 449 (S.D.N.Y. 2000) ..................... 6

*Hudson Furniture, Inc. v. Mizrahi*, No. 2022-1290, 2022 U.S. App. LEXIS 31590 (Fed. Cir. Nov. 16, 2022) ......................................................................................................... 24

*Ideavillage Products Corp. v. Dongguan Opete Yoga Wear Manufacturer Co., Ltd., et al.*, No. 17-cv-9099 (JMF) (S.D.N.Y. Nov. 21, 2017) ............................................................. 1

*In re Bibox Grp. Holdings Sec. Litig.*, No. 20cv2807(DLC), 2020 WL 4586819 (S.D.N.Y. Aug. 10, 2020) .............................................................................................................. 29

*In re Criminal Contempt Proceedings Against Gerald Crawford, Michael Warren*, 329 F.3d 131 (2d Cir. 2003).................................................................................................. 31

*In re GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. 262 (S.D.N.Y. 2012) .................................... 26

*In re Vuitton et Fils, S.A.*, 606 F.2d (2d Cir. 1979)....................................................................... 1

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) ....................................................................... 3

*JLM Couture, Inc. v. Aimibridal, et al.*, No. 18-cv-1565-JMF (S.D.N.Y. Feb. 21, 2018) ............. 1

*Kehr v. Yamaha Motor Corp.*, No. 09-CV-7379 (CM), 596 F. Supp. 2d 821 (S.D.N.Y. 2008) ............................................................................................................................ 32

*Kelly Toys Holdings, LLC v. Top Dep't Store*, No. 22 Civ. 558 (PAE), 2022 U.S. Dist. LEXIS 154175 (S.D.N.Y. Aug. 26, 2022).................................................................. 18, 22

*Klipsch Grp., Inc. v. Big Box Store Ltd.*, No. 1:12-cv-06283 (VSB), 2012 U.S. Dist. LEXIS 153137 (S.D.N.Y. Oct. 24, 2012)................................................................... 1

*Kott v. Brachport Enter. Corp.*, 45 Cal. App. 4th 1126 (Cal. Ct. App. 1996)............................. 18

*Lechner v. Marco-Domo Intnationales Interieur GmbH*, No. 03 Civ. 5664 (JGK), 2005 U.S. Dist. LEXIS 4022 (S.D.N.Y. Mar. 10, 2005) ............................................................ 9

*Licci v. Lebanese Canadian Bank*, 732 F.3d 161 (2d Cir. 2013)................................................... 3

*Lifeguard Licensing Corp. v. Ann Arbor T-Shirt Co., LLC*, No. 15 Civ. 8459 (LGS), 2016 U.S. Dist. LEXIS 89149 (S.D.N.Y. July 8, 2016) ............................................................ 5

*Local 1814, Int'l Longshoremen's Ass'n v. N.Y. Shipping Ass'n, Inc.*, 965 F.2d 1224 (2d Cir. 1992) ............................................................................................................................ 11

*Louis Vuitton Malletier v. Burlington Coat Factory Warehouse Corp.*, 426 F.3d 532 (2d Cir. 2005) ............................................................................................................................ 11

*Luxottica Grp. S.p.A. v. P'ships, et al.*, 18 Civ. 2188, 2019 WL 2357011 (N.D. Ill. June 4, 2019) ................................................................................................................................... 29

*Luxottica Grp. S.p.A. v. P'ships, et al.*, 391 F. Supp. 3d 816 (N.D. Ill. 2019) ............................ 28

*MacLean—Fogg Co. v. Ningbo Fastlink Equip. Co.*, No. 08 CV 2593, 2008 WL 5100414 (N.D. Ill. Dec. 1, 2008) ..................................................................................................... 27

*Mattel, Inc. v. 86755, et al.,* No. 18-cv-8825-JSR (S.D.N.Y. Sept. 26, 2018) ............................ 35

*Mattel, Inc. v. Animefunstore, et al.*, 18 Civ. 8824 (LAP) (Dkt. 81) (S.D.N.Y. May 1, 2020) ................................................................................................................................... 30

*McGraw-Hill Global Educ. Holdings LLC v. Khan*, 323 F. Supp. 3d 488 (S.D.N.Y. 2018) ......... 6

*Milliken v. Meyer*, 311 U.S. 457 (1940) ...................................................................................... 9

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ..................................... 17, 29

*N. Am. Olive Oil Ass'n v. Kangadis Food Inc.*, 962 F. Supp. 2d 514 (S.D.N.Y. 2013) ............... 12

*N.Y.C. Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305 (S.D.N.Y. 2010) ....... 14

*NBA Props. v. P'ships & Unincorporated Ass'ns*, 549 F. Supp. 3d 790 (N.D. Ill. 2021) ...... 26, 27

*North Face Apparel Corp. v. TC Fashions, Inc.*, No. 05 Civ. 9083 (RMB), 2006 U.S. Dist. LEXIS 14226 (S.D.N.Y. Mar. 30, 2006) .................................................................. 14

*Opella v. Rullan*, No. 10-21134-Civ-JORDAN/MCALILEY, 2011 U.S. Dist. LEXIS 69634 (S.D. Fla. June 29, 2011) ....................................................................................... 18

*Ouyeinc Ltd. v. Alucy*, No. 20 C 3490, 2021 WL 2633317 (N.D. Ill. June 25, 2021) ........... 27, 30

*Pearson Educ. Inc. v. Doe 1*, 18-CV-7380, 2019 WL 6498305 (S.D.N.Y. Dec. 2, 2019) ........... 30

*Philip Morris USA Inc. v. Veles Ltd.*, No. 06 Civ. 2988 (GBD), 2007 U.S. Dist. LEXIS 19780 (S.D.N.Y. Mar. 12, 2007) ..................................................................................... 22

*Polaroid Corp. v. Polarad Elecs. Corp*. 287 F.2d 492 (2d Cir. 1961) ....................................... 12

*Restoration Hardware, Inc. v. Lighting Design Wholesalers, Inc.*, 2017 WL 11509784 (S.D.N.Y. 2020) ....................................................................................................... 27, 30

*Restoration Hardware, Inc. v. Lighting Design Wholesalers, Inc.*, No. 17 Civ. 5553 (LGS), 2020 U.S. Dist. LEXIS 228149 (S.D.N.Y. Dec. 4, 2020) ..................................... 23

*Richemont N. Am., Inc. v. Linda Lin Huang*, No. 12 Civ. 4443 (KBF), 2013 U.S. Dist. LEXIS 136790 (S.D.N.Y. Sep. 24, 2013) ................................................................. 12

*Rio Props, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007 (9th Cir. 2002) ........................................... 29

*Rolex Watch, U.S.A., Inc. v. Pharel*, 2011 U.S. Dist. LEXIS 32249 (E.D.N.Y. Mar. 11, 2011) ................................................................................................................................. 8

*Rovio Entertainment Ltd. and Rovio Animation OY v. Best Baby and Kid Store, et al.*, No. 17-cv-4884-KPF (S.D.N.Y. June 28, 2017) ....................................................................... 35

*SEC v. Anticevic*, No. 05 CV 6991 (KMW), 2009 WL 361739 (S.D.N.Y. Feb. 8, 2009) ........... 26

*ShelterZoom Corp. v. Goroshevsky*, 19-cv-10162 (AJN), 2020 WL 4252722 (S.D.N.Y. July 23, 2020) ....................................................................................................................... 28

*Smart Study Co. v. Acuteye-Us*, No. 21 Civ. 5860 (GHW), 2022 WL 2872297 (S.D.N.Y. July 21, 2022) ............................................................................................................... 24, 28

*Solé Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100 (2d Cir. 2006) ................. 3

*Strabala v. Zhang*, 318 F.R.D. 81 (N.D. Ill. 2016) ...................................................................... 26

*Sulzer Mixpac AG v. Medenstar Indus. Co.*, 312 F.R.D. 329 (S.D.N.Y. 2015) ......... 23, 27, 28, 30

*Tevra Brands LLC v. Bayer Healthcare LLC*, No. 19 Civ. 4312, 2020 U.S. Dist. LEXIS 109919 (N.D. Cal. June 23, 2020) ...................................................................................... 17

*The Neck Hammock, Inc v. Danezen.com*, 2020 WL 6364598 (D. Utah Oct. 29, 2020) ............. 28

*Thomas Publ'g Co. v. Indus. Quick Search*, 237 F. Supp. 2d 489 (S.D.N.Y. 2002) ..................... 6

*Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d 93 (2d Cir. 2010) ......................................................... 11

*Trs. of Columbia Univ. v. Encyclopaedia Iranica Found.*, 2020 U.S. Dist. LEXIS 155031 (S.D.N.Y. Aug. 26, 2020) ......................................................................................... 30

*United Fin. Cas. Co. v. R.U.R. Transportation, Inc.*, No. 22cv333-LL-WVG, 2022 U.S. Dist. LEXIS 202831 (S.D. Cal. Nov. 7, 2022) ................................................................... 18

*Vans, Inc., et al. v. Walmart, Inc., et al.*, 21-cv-01876 (KES) Dkt. 65 (C.D. Cal. Mar. 31, 2022) ................................................................................................................................ 13

*Viada v. Osaka Health Spa, Inc.*, No. 04-CV-2744 (VM)(KNF), 235 F.R.D. 55 (S.D.N.Y. 2006) ................................................................................................................................ 33

*Victaulic Co. v. Allied Rubber & Gasket Co.*, No. 3:17-cv-01006-BEN-JLB, 2020 U.S. Dist. LEXIS 82150 (S.D. Cal. May 8, 2020) ....................................................................... 23

*Vineyard House, LLC v. Constellation Brands United States Operations, Inc.*, No. 4:19-cv-01424-YGR, 2021 U.S. Dist. LEXIS 15702 (N.D. Cal. Jan. 26, 2021) ...................... 13

*Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694 (1988) ........................................ 29

*Warner Bros. Entm't Inc. v. Doe,* No. 14-CV-3492 (KPF), 2014 U.S. Dist. LEXIS 190098 (S.D.N.Y. May 29, 2014) ................................................................... 15

*Water Splash, Inc. v. Menon,* 137 S. Ct. 1504 (2017) ...................................... 27, 28, 29

*WowWee Grp. Ltd. v. Haoqin*, No. 17 Civ 9893 (WHP), 2019 U.S. Dist. LEXIS 48408 (S.D.N.Y. Mar. 22, 2019) ................................................................... 19

*WowWee Grp. Ltd., et al. v. Meirly, et al.,* No. 18-cv-706 (AJN), 2019 U.S. Dist. LEXIS 51905 (S.D.N.Y. Mar. 27, 2019) ................................................................... 33

*Zanghi v. Ritella*, 2020 WL 589409 (S.D.N.Y. Feb. 5, 2020) ...................................... 29

*Zuru (Singapore) PTE., Ltd. v. Individuals, Corps., Ltd. Liab. Cos., P'ships, & Unincorporated Ass'ns Identified on Schedule A Hereto*, 22 Civ. 2483 (LGS), 2022 U.S. Dist. LEXIS 195268 (S.D.N.Y. Oct. 26, 2022) ................................................. 23

**Statutes**

15 U.S.C. § 1057(b) .......................................................................................... 11

15 U.S.C. § 1116(d)(1)(a) ................................................................................. 10

15 U.S.C. § 1117(a) .......................................................................................... 14

Consolidated Appropriations Act, 2021, Pub. L. 116-260 ........................................ 12

Fed. R. Civ. P. 20(a)(2) ............................................................................... 32, 33

Fed. R. Civ. P. 26(d)(1) ..................................................................................... 34

Fed. R. Civ. P. 4 ............................................................................................ 8, 22

Fed. R. Civ. P. 4(f)(3) ....................................................................................... 26

Fed. R. Civ. P. 65(b) ........................................................................................... 9

Fed. R. Civ. P. 65(b)(2) ..................................................................................... 30

N.Y. C.P.L.R. § 302 ............................................................................................. 3

**GLOSSARY**

| Term | Definition |
|---|---|
| **Plaintiffs or Spin Master** | Spin Master Ltd. and Spin Master Toys UK Limited |
| **Defendants** | aganv, BabeLeMi Store, Baby Accessories Baby accessories Store Store, Carol Monkey Baby Official Store, Childhood Toy Store, ChildhoodMemory Store, CubeIn store, CubeKK Store, Droxma Store, Fashionistar Store, Game Park Store, HelloCube Store, Jeneey International Trade Co., Ltd., Jinhua Yifan Arts And Crafts Co., Ltd., Kidlove Store, LAZA Toys Store, left magic Official Store, Little Prince Store, ModernBaby Store, Mommy Baby eshopping Store, Ningbo Royal Import And Export Co., Ltd., Panda Home Store, Puzzles Store, QY Toys Store, Saiker Store, Shantou Tomness Trading Co., Ltd., Shop1341109 Store, Shop2947271 Store, Shop910554234 Store, Smiling Toy Store, TAOAO TQQ BABY Store, Toy Room And Baby Store, Toyshouse Store, WZ Puzzles Store, Yiwu Jianyu Imp & Exp Co., Ltd., Yiwu Jixu Import And Export Co., Ltd., Yiwu Tuoying Technology Co., Ltd. and ZCUBE Official Store |
| **Alibaba** | Alibaba.com Singapore E-Commerce Pte. Ltd. and/or any other entity that owns and/or operates the Alibaba.com online marketplace platform, which allows manufacturers, wholesalers and other third-party merchants, like Defendants, to advertise, offer for sale, sell, distribute and ship their wholesale and retail products originating from China directly to consumers across the world and specifically to consumers residing in the U.S., including New York |
| **AliExpress** | AliExpress E-Commerce One Pte., Ltd. and/or any other entity that owns and/or operates the AliExpress.com online marketplace platform, which allows manufacturers, wholesalers and other third-party merchants, like Defendants, to advertise, offer for sale, sell, distribute and ship their wholesale and retail products originating from China directly to consumers across the world and specifically to consumers residing in the U.S., including New York |
| **Epstein Drangel** | Epstein Drangel LLP, counsel for Plaintiffs |
| **New York Address** | 244 Madison Ave, Suite 411, New York, New York 10016 |
| **Complaint** | Plaintiffs' Complaint |
| **Application** | Plaintiffs' *ex parte* Application for: 1) a temporary restraining order; 2) an order restraining Merchant Storefronts (as defined *infra*) and Defendants' Assets (as defined *infra*) with the Financial Institutions (as defined *infra*); 3) an order to show cause why a preliminary injunction should not issue; 4) an order authorizing bifurcated and alternative service and 5) an order authorizing expedited discovery |
| **Kanabar Dec.** | Declaration of Sachin Kanabar in Support of Plaintiffs' Application |

| | |
|---|---|
| **Nastasi Dec.** | Declaration of Gabriela N. Nastasi in Support of Plaintiffs' Application |
| **Spin Master Brand(s)** | Well-known brands, including Twisty Petz, Rubik's Cube, Flutterbye Fairy, Bunchems and Hatchimals, as well as under their licensed properties, such as Paw Patrol and Air Hogs |
| **Rubik's Cube Products** | A 3-D cube-shaped combination puzzle that consists of twisting and turning small cubes to return the 3-D cube to its original state with every side having one solid color, which comes in a variation of sizes, including, Rubik's Cube 3x3, Rubik's Cube 4x4 and Rubik's Cube 5x5 |
| **Rubik's Cube Marks** | U.S. Trademark Registration Nos.: 1,242,974 for "RUBIK'S  CUBE" for goods in Class 28 and 1,265,094 for "  " for goods in Class 28 |
| **Counterfeit Products** | Products bearing or used in connection with the Rubik's Cube Marks and/or marks that are confusingly similar to the Rubik's Cube Marks, and/or products in packaging and/or with labeling bearing the Rubik's Cube Marks and/or marks that are confusingly similar to the Rubik's Cube Marks, and/or products that are identical or confusingly similar to the Rubik's Cube Products |
| **Infringing Listings** | Defendants' listings for Counterfeit Products |
| **User Accounts** | Any and all websites and any and all accounts with online marketplace platforms such as Alibaba and/or AliExpress, as well as any and all as yet undiscovered accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them |
| **Merchant Storefronts** | Any and all User Accounts through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them operate storefronts to manufacture, import, export, advertise, market, promote, distribute, display, offer for sale, sell and/or otherwise deal in Counterfeit Products, which are held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them |
| **Defendants' Assets** | Any and all money, securities or other property or assets of Defendants (whether said assets are located in the U.S. or abroad) |
| **Defendants' Financial Accounts** | Any and all financial accounts associated with or utilized by any Defendants or any Defendants' User Accounts or Merchant Storefront(s) (whether said account is located in the U.S. or abroad) |

| | |
|---|---|
| **Financial Institutions** | PayPal Inc. ("PayPal"), Payoneer Inc. ("Payoneer"), the Alibaba Group d/b/a Alibaba.com payment services (e.g., Alipay.com Co., Ltd., Ant Financial Services Group), PingPong Global Solutions, Inc. ("PingPong") and Airwallex (Hong Kong) Limited ("Airwallex") |
| **Third Party Service Providers** | Online marketplace platforms, including, without limitation, Alibaba and/or AliExpress, as well as any and all as yet undiscovered online marketplace platforms and/or entities through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them manufacture, import, export, advertise, market, promote, distribute, offer for sale, sell and/or otherwise deal in Counterfeit Products which are hereinafter identified as a result of any order entered in this action, or otherwise |

## I.  **INTRODUCTION**

Pursuant to and in accordance with the Federal Rules of Civil Procedure, Plaintiffs submit this memorandum of law in support of its *ex parte* Application in light of Defendants' intentional and willful offering for sale and/or sales of Counterfeit Products.[1] Courts grant *ex parte* applications for relief in similar matters[2] and Plaintiffs' requests that the Court grant its Application.

Alibaba.com and AliExpress.com are online marketplace platforms that allow manufacturers, wholesalers and other third-party merchants, like Defendants, to advertise, offer for sale, sell, distribute and ship their wholesale and retail products originating from China directly to consumers across the world and specifically to consumers residing in the U.S., including New York. (Nastasi Dec., ¶ 3). Defendants are individuals and/or businesses, who, upon information and belief, are located in China but conduct business in the U.S. and other countries by means of their respective User Accounts and Merchant Storefronts on the Third Party Service Providers. (Kanabar Dec., ¶ 17; Nastasi Dec., ¶¶ 26-27). Through their Merchant Storefronts, Defendants offer for sale and/or sell consumer products, including Counterfeit Products, and market, distribute and ship such products to consumers throughout the world, including New York. (Kanabar Dec., ¶¶ 17-19; Nastasi Dec., ¶¶ 3, 26-27, Ex. A). Third-party merchants, like Defendants, often use evasive tactics like aliases, false addresses and other incomplete identification information to conceal their identities and avoid detection. (Nastasi Dec., ¶¶ 16-18). In fact, many Defendants'

---

[1] Where a defined term is referenced herein but not defined, it should be understood as it is defined in the Glossary.

[2] *See In re Vuitton et Fils, S.A.*, 606 F.2d 1 (2d Cir. 1979) (holding that *ex parte* temporary restraining orders are indispensable to the commencement of an action when they are the sole method of preserving a state of affairs in which the court can provide effective final relief); *see also, e.g.*, *JLM Couture, Inc. v. Aimibridal, et al.*, No. 18-cv-1565-JMF, Dkt. 18 (S.D.N.Y. Feb. 21, 2018); *Ideavillage Products Corp. v. Dongguan Opete Yoga Wear Manufacturer Co., Ltd., et al.*, No. 17-cv-9099 (JMF), Dkt. 19 (S.D.N.Y. Nov. 27, 2017); *Gucci America, Inc., et al v. Alibaba Group Holding LTD, et al*, No. 1:15-cv-03784 (PKC) (S.D.N.Y. June 23, 2015); *AW Licensing, LLC v. Bao*, No. 15- CV-1373, 2015 U.S. Dist. LEXIS 177101, at *2-3 (S.D.N.Y. Apr. 1, 2015); *Klipsch Grp., Inc. v. Big Box Store Ltd.*, No. 1:12-cv-06283 (VSB), 2012 U.S. Dist. LEXIS 153137, at *3-4 (S.D.N.Y. Oct. 24, 2012).

User Accounts and Merchant Storefronts are either devoid of any or contain unverifiable information regarding Defendants' true identities, locations and contact information, making it virtually impossible for Plaintiffs to obtain independently.  (Nastasi Dec., ¶¶ 16-18, 45).

Without Plaintiffs' authorization or consent, Defendants were and/or currently are manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Counterfeit Products to consumers located in the U.S., including New York, through their Merchant Storefronts. (Kanabar Dec., ¶¶ 17-19; Nastasi Dec., ¶¶ 26-27). Defendants' aforementioned actions have caused and will continue to cause irreparable harm to Plaintiffs' goodwill and reputation as well as to the unassuming consumers who will continue to believe that Defendants' inferior Counterfeit Products are authorized, sponsored, approved, endorsed and/or licensed by Plaintiffs, when, in fact, they are not. (Kanabar Dec., ¶ 22).

Plaintiffs' request for *ex parte* relief is particularly necessary because if Defendants receive notice of this Lawsuit, it is highly likely that they will transfer, conceal and/or destroy 1) the Counterfeit Products, 2) the means of making or obtaining such Counterfeit Products, 3) business records and 4) any and all other evidence relating to their infringing activities. (Nastasi Dec., ¶ 18).  Moreover, they will likely hide or dispose of Defendants' Assets. *Id*.  In light of the foregoing and considering that it typically takes noticed Financial Institutions and/or Third Party Service Providers a minimum of five (5) days to locate, attach and freeze Defendants' Assets and/or Defendants' Financial Accounts, Plaintiffs respectfully request that the Court order bifurcated service specifically allowing enough time for the Financial Institutions and/or Third Party Service Providers to comply with the TRO before ordering service on Defendants.

## II.    STATEMENT OF RELEVANT FACTS

The facts are contained in the factual declaration of Sachin Kanabar and the summarizing attorney declaration of Gabriela N. Nastasi, plus accompanying exhibits. *See* Kanabar Dec.;

Nastasi Dec.; Complaint, Exs. A-C.  In the interest of brevity, any factual discussion is contained in the legal analysis below.[3]

### III.    ARGUMENT

### A.  THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS

Determining personal jurisdiction over a foreign defendant in a federal question case requires a two-step inquiry.  First, courts must look to the law of the forum state to determine whether personal jurisdiction will lie. *Licci v. Lebanese Canadian Bank*, 732 F.3d 161, 168 (2d Cir. 2013) (citing *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007)).  Second, if jurisdiction lies, the court then considers whether the district court's exercise of personal jurisdiction over a foreign defendant comports with due process protections established under the United States Constitution.  *See id.*; *see also Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  As alleged herein, Defendants' unlawful counterfeiting and infringing activities subject them to long-arm jurisdiction in New York under N.Y. C.P.L.R. § 302(a)(1).[4]  Furthermore, New York's exercise of jurisdiction over Defendants thereunder comports with due process.

### 1.  Defendants are Subject to Personal Jurisdiction Under N.Y. C.P.L.R. § 302(a)(1)

Under § 302(a)(1), there are two requirements that must be met to establish personal jurisdiction: "(1) [t]he defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Licci*, 732 F.3d at 168 (quoting *Solé Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006)).  In applying the test for the "transacts business" prong of § 302(a)(1), "New York decisions … tend to conflate the long-

---

[3] Although Plaintiffs acknowledge that they seek multiple forms of relief, in the interest of brevity and with respect for the Individual Rules and Practices in Civil Cases of each District Judge in the Southern District of New York, Plaintiffs respectfully submit this memorandum of law in support of their Application. Plaintiffs will promptly provide supplemental briefing and/or oral argument on any issue should the Court request it.

[4] Plaintiffs respectfully submit that Defendants are also subject to jurisdiction under § 302(a)(3).  *See Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458, 470 (S.D.N.Y. 2008).  However, this alternative analysis is omitted for brevity.  Plaintiffs will provide supplemental briefing and/or oral argument on any issue upon the Court's request.

arm statutory and constitutional analyses by focusing on the constitutional standard," ergo, "a defendant need not be physically present in New York to transact business there within the meaning of [this first prong]," so long as the defendant has engaged in "purposeful activity," for example, "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Chloe v. Queen Bee of Beverly Hills*, *LLC*, 616 F.3d 158, 169-71 (2d Cir. 2010) (quoting *Best Van Lines, Inc.*, 490 F.3d at 246-247) (internal quotation marks omitted).  The second prong of § 302(a)(1) requires an "articulable nexus or substantial relationship between the business transaction and the claim asserted," however, "a causal relationship between the business transaction and the claim asserted" is not required. *Gucci Am., Inc. v. Weixing Li*, 135 F. Supp. 3d 87, 93 (S.D.N.Y. 2015) (citations omitted) (internal citations omitted) (internal quotation marks omitted).  Rather, it is sufficient that "the latter is not completely unmoored from the former." *Id*.

In determining whether a party has "transacted business," New York courts must look at the totality of the circumstances concerning the party's interactions with, and activities within, the state. *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 565 (S.D.N.Y. 2000). Whether the exercise of personal jurisdiction is permissible in the context of Internet activity is "directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." *Id.* Courts in this Circuit have regularly conferred personal jurisdiction on a given defendant based on that defendant's operation of a fully interactive website through which consumers can access the site from anywhere and purchase products, as is the case with Defendants' User Accounts and Merchant Storefronts, and allow for customers all over the world to communicate with Defendants and view and purchase products, including Counterfeit Products, as demonstrated by the checkout pages completed by Epstein Drangel and Epstein Drangel's

purchase of Counterfeit Products from a sampling of Defendants. *See* Nastasi Dec., ¶¶ 27-28, Ex. A; *see also Chloe*, 616 F.3d at 170.

This Circuit has exercised jurisdiction over defendants under § 302(a)(1) where such defendants regularly offer for sale and sell goods through online marketplaces, "even though Defendants do not control their [] 'storefront' or its interactivity to the same extent that they control their own highly interactive website." *Lifeguard Licensing Corp. v. Ann Arbor T-Shirt Co., LLC*, No. 15 Civ. 8459 (LGS), 2016 U.S. Dist. LEXIS 89149 *7 (S.D.N.Y. July 8, 2016) (quoting *EnviroCare Techs., LLC v. Simanovsky*, No. 11-CV-3458(JS)(ETB), 2012 U.S. Dist. LEXIS 78088 *8 (E.D.N.Y. June 4, 2012).[5] Jurisdiction is proper "for internet sellers who use an internet storefront like Amazon," when the Internet sellers are "commercial vendors who use it 'as a means for establishing regular business with a remote forum.'" *Id*. at *8. In *Lifeguard Licensing Corp.*, Judge Schofield held that a "website that does more than provide information about a product and allows customers to purchase goods online, is a 'highly interactive website,' which may provide a basis for personal jurisdiction under CPLR § 302(a)." *Id*. at *7. (citing *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 170 (2d Cir. 2010) and *Grand v. Schwartz*, No. 15 Civ. 8779, 2016 U.S. Dist. LEXIS 61606 at *3 (S.D.N.Y. May 1, 2016) (holding that interactive commercial websites provides support for jurisdiction pursuant to CPLR § 302(a)(1))). Moreover, "[r]egularly offering and selling goods via an online marketplace such as Amazon.com can provide a basis for personal jurisdiction under CPLR § 302(a), even though Defendants do not control their Amazon.com 'storefront' or its interactivity to the same extent that they control their own highly interactive website." *Id*. at *8. If a defendant

> wishes to operate an interactive website accessible in New York, there is no inequity in subjecting [that defendant] to personal jurisdiction here. If [a defendant] does not want its website to subject it to personal jurisdiction here,

---

[5] *See also supra* fn. 4.

it is free to set up a passive website that does not enable [that defendant] to transact business in New York.

*Thomas Publ'g Co. v. Indus. Quick Search*, 237 F. Supp. 2d 489, 492 (S.D.N.Y. 2002).[6]

Further, in *EnviroCare Techs.*, the court held that "if a website is interactive and allows a buyer in New York to submit an order online, courts typically find that the website operator is 'transacting business' in New York and is therefore subject to the court's jurisdiction." 2012 U.S. Dist. LEXIS 78088 at *9 (citing *Hsin Ten Enter. USA, Inc. v. Clark Enters.*, 138 F. Supp. 2d 449, 456 (S.D.N.Y. 2000) ("Generally, an interactive website supports a finding of personal jurisdiction over the defendant.")) Similarly, in *Chloe, supra*, the Second Circuit found that while the single act of shipping a counterfeit product might be sufficient to subject him to the jurisdiction of a New York court, it did not need to delve into such an inquiry as the defendant "operated a highly interactive website offering [counterfeit products] for sale to New York consumers." *Chloe*, 616 F.3d 158, 170.

In some circumstances, courts in the Second Circuit have found that "[t]he offering for sale of even one copy of an allegedly infringing item, even if no sale results, is sufficient to give personal jurisdiction over the alleged infringer under N.Y. CPLR § 302(a), subd. 1, 2 and 3." *Cartier v. Seah LLC*, 598 F. Supp. 2d 422, 425 (S.D.N.Y. 2009). In *McGraw-Hill Global Educ. Holdings LLC v. Khan*, 323 F. Supp. 3d 488 (S.D.N.Y. 2018), this Court found personal jurisdiction where the defendant's website was "interactive" and allowed a buyer to submit an order online. *McGraw-Hill* cited to *Audiovox Corp v. S. China Enter., Inc.*, 2012 U.S. Dist. LEXIS 104656 at *3 (S.D.N.Y. Jul. 26, 2012) for the proposition that "if a website is interactive and allows

---

[6] This Court has repeatedly found personal jurisdiction over defendants based in China who are operating Merchant Storefronts on online marketplace platforms, such as Alibaba, AliExpress, Wish and eBay. *See, e.g.*, *Allstar Marketing Group, LLC v. activate2011store, et al.*, 19-cv-4204-KPF (S.D.N.Y. May 9, 2019); *Allstar Marketing Group, LLC v. Alice Wonder Household (Shanghai) Co., Ltd.*, 19-cv-4208-KPF (S.D.N.Y. May 9, 2019); *Allstar Marketing Group, LLC v. 545756338, et al.*, 19-cv-4209-KPF (S.D.N.Y. May 9, 2019); *Allstar Marketing Group, LLC v. Learns babyshop, et al.*, 19-cv-4211-KPF (S.D.N.Y. May 9, 2019).

a buyer in New York to submit an order online, courts typically find that the website operator is 'transacting business' in New York and is therefore subject to the court's jurisdiction." *See also*, *Hsin Ten Enter.*, 138 F. Supp. 2d 449, 456 ("Generally, an interactive website supports a finding of personal jurisdiction over the defendant.").

Here, Defendants operate interactive Merchant Storefronts on Alibaba.com and AliExpress.com, allowing New York consumers to inquire and communicate with Defendants, purchase goods, including Counterfeit Products, by and through Defendants' listings, and upon completion of a sale, ship goods to New York. The fact that Defendants have chosen to open their respective User Accounts for the purpose of selling Counterfeit Products through their Merchant Storefronts alone supports a finding that Defendants have intentionally used Alibaba.com and AliExpress.com "as a means for establishing regular business with a remote forum." *EnviroCare Techs., LLC*, 2012 U.S. Dist. LEXIS 78088 at *10 (quoting *Boschetto v. Hansing*, 539 F.3d 1011, 1019 (9th Cir. 2008)). Moreover, the fact that Defendants are offering the Counterfeit Products through their Merchant Storefronts coupled with the fact that most of their User Accounts reflect multiple sales to consumers across the world, including repeat sales to consumers in the U.S., confirms that Defendants are sophisticated sellers operating commercial businesses through Alibaba.com and AliExpress.com, such that they are subject to jurisdiction. *Id*. at *10.

It is highly likely that Defendants have shipped Counterfeit Products to consumers in New York based on the following: 1) Epstein Drangel completed a checkout page for an order of Counterfeit Products to Defendants through an account associated with the New York Address and/or provided the New York Address as the shipping address and/or sent messages to Defendants through Alibaba and AliExpress' messaging system to confirm that Defendants ship to New York, 2) Epstein Drangel purchased Counterfeit Products from a representative sampling of Defendants

to New York, 3) and all Defendants accept payment in U.S. dollars. (Nastasi Dec., ¶¶ 23, 27-29, Ex. A).

Nevertheless, whether a defendant physically shipped Counterfeit Products into New York is not determinative of whether personal jurisdiction exists, as courts in this Circuit examine a given defendant's online interactions with consumers in considering whether a particular defendant has transacted business in the forum state under § 302(a)(1). *Rolex Watch, U.S.A., Inc. v. Pharel*, 2011 U.S. Dist. LEXIS 32249, at * 6 (E.D.N.Y. Mar. 11, 2011). Plaintiffs and Epstein Drangel have viewed Defendants' Counterfeit Products via their online User Accounts and Merchant Storefronts. (Kanabar Dec., ¶¶ 17-19; Nastasi Dec., ¶ 21). Epstein Drangel then completed checkout pages for Counterfeit Products by providing the New York Address as the shipping address.[7] (Nastasi Dec., ¶ 27, Ex. A). Further, Epstein Drangel purchased Counterfeit Products from a representative sampling of Defendants. *Id.* Thus, Defendants' sophisticated commercial operations, specifically including their offering for sale and/or selling of Counterfeit Products through their highly interactive User Accounts and Merchant Storefronts on Alibaba.com and AliExpress.com, Epstein Drangel's completion of checkout pages with the New York Address, Epstein Drangel's purchase of Counterfeit Products, along with Defendants' own representations on their Merchant Storefronts that they ship Counterfeit Products to the U.S., including New York, unequivocally establishes that Defendants conduct business within this District and the claims in this suit arise from Defendants' business dealings and transactions with consumers in New York.[8]

---

[7] Under case law of the Second Circuit, when analyzing personal jurisdiction in the Internet context, "traditional statutory and constitutional principles remain the touchstone of the inquiry", and while a website's interactivity, "may be useful" for analyzing personal jurisdiction 'insofar as it helps to decide whether the defendant 'transacts any business' in New York,'" … "it does not amount to a separate framework for analyzing internet-based jurisdiction." *Best Van Lines, Inc.*, 490 F.3d at 252 (quoting *Best Van Lines, Inc. v. Walker*, No. 03 Civ. 6585 (GEL), 2004 U.S. Dist. LEXIS 7830, at *9 (S.D.N.Y. May 4, 2004) (internal citation omitted)).

[8] Plaintiffs respectfully submit that the Court has jurisdiction pursuant to Fed. R. Civ. P. 4(k)(2), which "provides for jurisdiction over a defendant if a claim arises under federal law, if the defendant is not subject to jurisdiction of the courts of general jurisdiction of any state, and if the exercise of jurisdiction is consistent with the Constitution and

*Id.*

### 2.  <u>Exercising Personal Jurisdiction Over Defendants Comports with Due Process</u>

Asserting personal jurisdiction over Defendants also comports with the Due Process Clause of the U.S. Constitution, as Defendants have "certain minimum contacts … such that maintenance of th[is] suit does not offend 'traditional notions of fair play and substantial justice.'" *Calder v. Jones*, 465 U.S. 783, 788 (1984) (quoting *Milliken v. Meyer*, 311 U.S. 457 (1940)).  Defendants intentionally directed activity towards the New York market, thereby purposefully availing themselves of "the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (U.S. 1985); *Best Van Lines, Inc.*, 490 F.3d at 243; *see also* Nastasi Dec., ¶¶ 27-29, Ex. A.  Moreover, "as a practical matter, the Due Process Clause permits the exercise of jurisdiction in a broader range of circumstances of N.Y. C.P.L.R. § 302, and a foreign defendant meeting the standards of § 302 will satisfy the due process standard." *Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458, 469 (S.D.N.Y. 2008).  Accordingly, Plaintiffs respectfully submit that this Court has personal jurisdiction over Defendants in this action.

### B.  **PLAINTIFFS ARE ENTITLED TO AN *EX PARTE* TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Here, an *ex parte* order is essential to prevent immediate and irreparable injury to Plaintiffs. A temporary restraining order may be granted without written or oral notice to the opposing party or that party's counsel where "it clearly appears from the specific facts shown by affidavit . . . that immediate and irreparable injury, loss or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition." Fed. R. Civ. P. 65(b).  Section 34 of the Lanham Act expressly authorizes this Court to issue *ex parte* restraining orders "with respect to a

---

laws of the United States." *Lechner v. Marco-Domo Internationales Interieur GmbH*, No. 03 Civ. 5664 (JGK), 2005 U.S. Dist. LEXIS 4022, *8 (S.D.N.Y. Mar. 10, 2005).

violation [of the Act] that consists of using a counterfeit mark in connection with the sale, offering for sale, or distribution of goods." 15 U.S.C. § 1116(d)(1)(a).[9]

Once a violation of the Lanham Act is demonstrated, the issuance of an *ex parte* order is appropriate upon showing that: (i) the Plaintiffs will provide adequate security; (ii) any order other than an *ex parte* order is not adequate to achieve the purposes of 15 U.S.C. § 1114; (iii) the Plaintiffs have not publicized the requested *ex parte* order; (iv) the Plaintiffs are likely to succeed on showing that defendants are using counterfeit marks; (v) an immediate and irreparable injury will occur if such *ex parte* order is not granted; (vi) the materials to be seized will be located at the place identified in the application; (vii) the harm to the Plaintiffs in denying the application outweighs the harm to defendants in granting the order and (viii) if prior notice was given, defendants would destroy, move, hide or otherwise make such matter inaccessible to the court. 15 U.S.C. § 1116(d)(4)(B). As discussed below, Plaintiffs meet each of the relevant criteria for the issuance of an *ex parte* temporary restraining order under the Lanham Act.[10]

An *ex parte* temporary restraining order is particularly warranted in cases, such as the instant one, involving offshore counterfeiters who conceal their identities and engage in unlawful and harmful activities over the Internet to avoid revealing their actual locations and identities. (Nastasi Dec., ¶¶ 16-18, 45). Defendants, who, upon information and belief, are located in China and operate their businesses exclusively over the Internet, knowingly and willfully offer for sale and/or sell Counterfeit Products through their User Accounts and on their Merchant Storefronts on Alibaba.com and AliExpress.com. (Kanabar Dec., ¶¶ 17-19; Nastasi Dec., ¶¶ 27-28, Ex. A). The

---

[9] Congress' purpose for enacting such *ex parte* remedies was to ensure that courts were able to effectively exercise their jurisdiction in counterfeiting cases and to prevent counterfeiters given prior notice from disappearing or quickly disposing of infringing inventory or records relating to their counterfeiting and illegal actions. *See* Senate-House Joint Explanatory Statement on trademark Counterfeiting Legislation, 130 Cong. Rec. H12076, at 12080 (Oct. 10, 1984).
[10] Plaintiffs have expressed their willingness to provide security in conjunction with the *ex parte* relief they seek. *See* [Proposed] Order, filed herewith. Also, since Defendants' location and the location of the Counterfeit Products are unclear, Plaintiffs are not requesting a seizure order in this Application. (Nastasi Dec., ¶¶ 16-18, 40).

covert nature of Defendants and their counterfeiting activities make any order other than an *ex parte* temporary restraining order an exercise in futility.  The immediate and irreparable harm to Plaintiffs' businesses and reputations, as well as to the goodwill associated with the Rubik's Cube Marks, in denying their Application for an *ex parte* temporary restraining order greatly outweighs the harm to Defendants' interests in continuing to offer for sale and sell Counterfeit Products. (Kanabar Dec., ¶ 22).

"To obtain a preliminary injunction, a plaintiff must establish: '(1) the likelihood of irreparable injury in the absence of such an injunction, and (2) either (a) likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation plus a balance of hardships tipping decidedly' in its favor.'" *Louis Vuitton Malletier v. Burlington Coat Factory Warehouse Corp.*, 426 F.3d 532, 537 (2d Cir. 2005) (quoting *Federal Express Corp. v. Federal Espresso, Inc.*, 201 F.3d 168, 173 (2d Cir. 2000)).  The "standards which govern consideration of an application for a temporary restraining order… are the same standards as those which govern a preliminary injunction." *Local 1814, Int'l Longshoremen's Ass'n v. N.Y. Shipping Ass'n, Inc.*, 965 F.2d 1224, 1228 (2d Cir. 1992).  Plaintiffs meet the standard for a preliminary injunction and the Court should enter a temporary restraining order.

### 1.  Plaintiffs are Likely to Prevail on the Merits of Their Lanham Act Claims

To establish a likelihood of success on trademark counterfeiting and infringement claims, a plaintiff must show: (1) that its marks are valid and entitled to protection, and (2) that defendants' use of plaintiff's marks is likely to cause confusion. *Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d 93 (2d Cir. 2010). First, the U.S. trademark registration certificates submitted in conjunction with this Application provide *prima facie* evidence of both the validity of the Rubik's Cube Marks, as well as Plaintiffs' ownership of the same. 15 U.S.C. § 1057(b). (Kanabar Dec., ¶ 9, Ex. B).

Second, a proper likelihood of confusion inquiry generally involves an analysis of the

factors set forth in *Polaroid Corp. v. Polarad Elecs. Corp.* 287 F.2d 492, 495 (2d Cir. 1961). Yet, "where counterfeit marks are involved, it is not necessary to conduct the step-by-step examination of each *Polaroid* factor because counterfeit marks are inherently confusing." *Fendi Adele S.R.L. v. Filene's Basement, Inc.*, 696 F. Supp. 2d 368, 383 (S.D.N.Y. 2010) (internal citations omitted). Instead, "[t]he court need only determine the more fundamental question of whether there are items to be confused in the first place -- that is, whether the items at issue . . . are, in fact, counterfeit and whether [d]efendants sold those items, or offered those items for sale." *Id.* at 383 (internal citations omitted). Regardless, even if a *Polaroid* analysis were necessary, a straightforward application of the test demonstrates that likelihood of confusion exists in this case.

Because Plaintiffs have shown that they are likely to prevail on their trademark counterfeiting and infringement claims, they have also shown that they likely will prevail on their claims for false designation of origin, passing off and unfair competition. *Richemont N. Am., Inc. v. Linda Lin Huang*, No. 12 Civ. 4443 (KBF), 2013 U.S. Dist. LEXIS 136790, at *14-16 n.15 (S.D.N.Y. Sep. 24, 2013).

### 2. Plaintiffs are Likely to Prevail on Their State Law Claims

Since Plaintiffs have shown a likelihood of success on their Lanham Act claims, Plaintiffs have also shown a likelihood of success on their New York unfair competition and unjust enrichment claims. *N. Am. Olive Oil Ass'n v. Kangadis Food Inc.*, 962 F. Supp. 2d 514, 521 (S.D.N.Y. 2013).

### 3. Plaintiffs are Entitled to a Presumption of Irreparable Harm

Plaintiffs are entitled to a rebuttable presumption of irreparable harm as they are likely to succeed on the merits of its Lanham Act claims. On December 27, 2020, the Trademark Modernization Act of 2020 (codified as part of the Consolidated Appropriations Act, 2021, Pub. L. 116-260) was signed into law. The Act, *inter alia*, amended the text of 15 U.S.C. § 1116(a)

codified a rebuttable presumption of irreparable harm which, as amended, now reads in relevant part:

> *A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection in the case of a motion for a permanent injunction or upon a finding of likelihood of success on the merits for a violation identified in this subsection in the case of a motion for a preliminary injunction or temporary restraining order*.

*See City of N.Y. v. Lopez*, No. 21 CV 7862 (JPO), 2021 U.S. Dist. LEXIS 243449 (S.D.N.Y. Dec. 21, 2021) (emphasis added); *Vans, Inc., et al. v. Walmart, Inc., et al.*, 21-cv-01876 (KES) Dkt. 65, *23 (C.D. Cal. Mar. 31, 2022). Accordingly, since Plaintiffs have established that they are likely to succeed on the merits of their claims under 15 U.S.C. § 1125(a), Plaintiffs are entitled to a presumption of irreparable harm.

## 4. The Balance of Hardships Favors Plaintiffs

The balance of hardships unquestionably and overwhelmingly favors Plaintiffs.  Here, as described above, Plaintiffs have suffered, and will continue to suffer, irreparable harm to their businesses, the value, goodwill and reputation built up in and associated with the Rubik's Cube Marks and to their reputations as a result of Defendants' willful and knowing sales of substandard Counterfeit Products. (Kanabar Dec., ¶ 22). Any harm to Defendants would only be the loss of Defendants' ability to continue to offer their Counterfeit Products for sale, or, in other words, the loss of the benefit of being allowed to continue to unfairly profit from their illegal and infringing activities.  "Indeed, to the extent defendants 'elect[] to build a business on products found to infringe[,] [they] cannot be heard to complain if an injunction against continuing infringement destroys the business so elected." *Broad. Music, Inc. v. Prana Hosp.*, Inc., 158 F. Supp. 3d 184, 196 (S.D.N.Y. 2016) (internal citation omitted).

## 5. Enjoining Defendants from Using the Rubik's Cube Marks Will Serve the Public Interest

13

The public interest will be served by the issuance of a temporary restraining order and preliminary injunction, as "the public has an interest in not being deceived—in being assured that the mark it associates with a product is not attached to goods of unknown origin and quality." *N.Y.C. Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 344 (S.D.N.Y. 2010). Here, the public has an interest in being able to rely on the high quality of Rubik's Cube Products. (Kanabar Dec., ¶ 22). Since Defendants have willfully and knowingly inserted substandard Counterfeit Products into the marketplace, the public would benefit from a temporary restraining order and preliminary injunction halting any further sale and distribution of Counterfeit Products.

## C. PLAINTIFFS ARE ENTITLED TO AN ORDER 1) PREVENTING THE FRAUDULENT TRANSFER OF ASSETS AND 2) FREEZING DEFENDANTS' MERCHANT STOREFRONTS

### 1. Defendants' Assets Must be Frozen

Considering the nature of Defendants' counterfeiting businesses, and Plaintiffs' showing that they have a high likelihood of succeeding on the merits of all of their claims, Plaintiffs will be entitled to an equitable accounting of Defendants' profits from their sales of Counterfeit Products. Plaintiffs' request for an asset freeze order granting Plaintiffs information regarding the location of Defendants' Assets, the attachment of Defendants' Assets and an injunction preventing the transfer from or to Defendants' Financial Accounts by the Financial Institutions and Third-Party Service Providers is both necessary and appropriate, and is within this Court's discretion to preserve Plaintiffs' right to the relief sought in the Complaint. *See* 15 U.S.C. § 1117(a).[11]

District courts have "authority to freeze those assets which could [be] used to satisfy an equitable award of profits." *North Face Apparel Corp. v. TC Fashions, Inc.*, No. 05 Civ. 9083 (RMB), 2006 U.S. Dist. LEXIS 14226, at *10 (S.D.N.Y. Mar. 30, 2006) (internal citation omitted).

---

[11] *See also*, *e.g.*, *Balenciaga Am., Inc. v. Dollinger*, No. 10 Civ. 2912 (LTS), 2010 U.S. Dist. LEXIS 107733, at *22 (S.D.N.Y. Oct. 8, 2010).

In doing so, a court "may exempt any particular assets from the freeze on the ground that they [are] not linked to the profits of allegedly illegal activity." *Id.* at *11. The onus is on "the party seeking relief [from any such asset freeze] to 'present documentary proof'" that its profits aren't from such illegal activity. *Id.*

Under 15 U.S.C. § 1117(a), a plaintiff in an action arising thereunder is entitled to recover a defendant's profits derived from the counterfeiting and/or infringement and/or plaintiff's damages. *See Gucci Am. v. Bank of China*, 768 F.3d 122, 131-132 (2d Cir. 2014) (A trademark "infringer is required in equity to account for and yield up his gains to the true owner," and "profits are then allowed as an equitable measure of compensation."). Specifically, with respect to claims involving the infringement of federally registered copyrighted works and/or those arising under the Lanham Act, it has been established in this Circuit, as well as sister circuits, that district courts have the authority to issue a prejudgment asset restraint injunction in favor of plaintiffs seeking an accounting and/or another equitable remedy against allegedly infringing defendants. *Warner Bros. Entm't Inc. v. Doe,* No. 14-CV-3492 (KPF), 2014 U.S. Dist. LEXIS 190098 (S.D.N.Y. May 29, 2014).

An asset freeze in the instant matter is unquestionably warranted because Defendants, who are foreign individuals and/or entities based in China, are manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Counterfeit Products to U.S. consumers solely via the Internet, and accepting payment for such Counterfeit Products in U.S. Dollars through Financial Institutions, thereby causing irreparable harm to Plaintiffs in the form of lost sales, loss of goodwill and loss of control of its reputation with licensees, retailers and consumers, and can, and most certainly have the incentive to, transfer and hide their ill-gotten funds if their assets are not frozen. *See* Kanabar Dec., ¶ 22; *see also Dama*

*S.P.A. v. Doe*, No. 15-cv-4528 (VM), 2015 U.S. Dist. LEXIS 178076, at *4-6 (S.D.N.Y. June 12, 2015).[12] Therefore, Plaintiffs respectfully submit that this Court should exercise its inherent equitable power and freeze Defendants' Assets and Defendants' Financial Accounts for the purpose of preserving Defendants' funds and ensuring that a meaningful accounting of their profits can be made.[13]

### 2. **Defendants' User Accounts and Merchant Storefronts Must be Frozen**

A temporary restraining order which, in part, restrains the Third Party Service Providers from providing services to Defendants' User Accounts and Merchant Storefronts is warranted and necessary because the continued offering for sale and/or sale of the Counterfeit Products by Defendants on their Merchant Storefronts will result in immediate and irreparable injury to Plaintiffs. *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 126 (2d Cir. 2014); *AW Licensing, LLC v. Bao*, No. 15-CV-1373, 2015 U.S. Dist. LEXIS 177101, at *3 (S.D.N.Y. Apr. 1, 2015).

### D. **PLAINTIFFS ARE ENTITLED TO AN ORDER AUTHORIZING BIFURCATED AND ALTERNATIVE SERVICE OF PROCESS BY ELECTRONIC MEANS**

Plaintiffs respectfully request that this Court issue an order granting it permission to serve each Defendant via the following combination of electronic methods: 1) registered electronic mail, or 2) messaging through Defendants' User Accounts, and 3) website publication. For service by registered electronic mail, Plaintiffs propose using Outlook.com as well as Rmail (www.rmail.com), an online service that confirms valid proof of authorship, content, and delivery of an email, as well as the official time and date that the email was sent and received. (Nastasi

---

[12] *See also supra* fn. 2.
[13] Upon the entering of an asset freeze, Plaintiffs also request that the Court Order Defendants and/or the Financial Institutions and/or the Third-Party Service Providers to immediately identify Defendants' Assets and Defendants' Financial Accounts and the respective current account or fund balances of the same.

Dec., ¶ 52). Along with service via email, Plaintiffs respectfully request that the Court, in its discretion, permit service via website publication.[14]

Plaintiffs submit that their requested methods of alternative service are warranted herein based, not only in statutory authority, but also the practical facts and circumstances surrounding this case. Third-party merchants on Alibaba.com and AliExpress.com, like Defendants, have been known to use aliases, false addresses and other incomplete identification information to shield their true identities. It is, however, imperative for every Defendant to have a current and operational e-mail address to operate their Merchant Storefronts and conduct their businesses. (Nastasi Dec., ¶ 52). Further, Epstein Drangel's Beijing office recently called the Chinese Ministry of Justice to inquire about the current processing time for service under the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague") and were informed that currently, the average service time is approximately six (6) months. *Id.* ¶ 40. It is further worth mentioning that Covid-19 has caused most businesses to either close their offices and/or work remotely, which has further delayed service via the Hague.[15]  *Id.*

1. **Regardless of Whether the Hague Is Applicable, Alternative Service via Electronic Means Is Necessary and Proper Under the Circumstances**

   a) ***The Hague Is Inapplicable Because Certain Defendants' Addresses Are Unknown***

As an initial matter, although not outcome determinative, Plaintiffs respectfully submit that the Hague is not applicable to all Defendants in this action. Pursuant to the plain language of Article 1 of the Hague, "[t]his Convention shall not apply where the address of the person to be served with the document is not known." *See* Hague, Art. 1; *see also Advanced Access Content*

---

[14] Publication on a website has been deemed appropriate service under Fed. R. Civ. P (4)(3) "so long as the proposed publication is 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *National Association for Stock Car Auto Racing, Inc. v. Does*, 584 F. Supp. 2d 824, 826 (W.D.N.C. 2008) (quoting *Mullane*, 339 U.S. at 315-16).

[15] *See Tevra Brands LLC v. Bayer Healthcare LLC*, No. 19 Civ. 4312, 2020 U.S. Dist. LEXIS 109919, at *5 (N.D. Cal. June 23, 2020) (delays to service via the Hague "may arise due to COVID-19 pandemic....").

*Sys. Licensing Adm'r, LLC v. Shen*, No. 14 Civ. 1112 (VSB), 2018 U.S. Dist. LEXIS 169603, at *7 (S.D.N.Y. Sep. 30, 2018) and *Kelly Toys Holdings, LLC v. Top Dep't Store*, No. 22 Civ. 558 (PAE), 2022 U.S. Dist. LEXIS 154175, at *17 (S.D.N.Y. Aug. 26, 2022) (collecting cases). "Courts in this Circuit have found an address is 'not known' if the Plaintiffs exercised reasonable diligence in attempting to discover a physical address for service of process and was unsuccessful in doing so." *Id.* at *19-21 (quoting *Advanced Access*, 2018 U.S. Dist. LEXIS 169603, at *7-8 (S.D.N.Y. Sep. 30, 2018).  However, the use of a "reasonable diligence" standard in connection with the determination of whether an address is "not known" pursuant to the Hague seems to have originated from a singular California state appellate division case. *See Opella v. Rullan*, No. 10-21134-Civ-JORDAN/MCALILEY, 2011 U.S. Dist. LEXIS 69634, at *14-15 (S.D. Fla. June 29, 2011) (quoting *Kott v. Brachport Enter. Corp.*, 45 Cal. App. 4th 1126, 1137-39 (Cal. Ct. App. 1996) ("*Kott*") ("I am aware of no binding precedent that establishes a standard for determining when a Plaintiffs 'knew' the address of the person to be served, in the context of the exemption in Article 1 of the Hague Service Convention. However, I am persuaded by the reasoning and standard expressed by a California appellate court in [*Kott*], and choose to apply it here: an address is not 'known' within Article I of the Convention only when it is unknown to the Plaintiffs after the Plaintiffs exercised reasonable diligence in attempting to discover that address.")).  The *Kott* court held that "reasonable diligence" "denotes a thorough, systematic investigation and inquiry conducted in good faith by the party or his agent or attorney." *United Fin. Cas. Co. v. R.U.R. Transportation, Inc.*, No. 22cv333-LL-WVG, 2022 U.S. Dist. LEXIS 202831, at *4-5 (S.D. Cal. Nov. 7, 2022) (quoting *Kott*) (citations omitted)). "To satisfy the reasonable diligence standard, it is generally sufficient [] for a plaintiff to show: '[a] number of honest attempts to learn defendant's whereabouts or his address by inquiry of relatives, friends, and acquaintances, or of his employer,

and by investigation of appropriate city and telephone directories, the voters' register, and the real and personal property index in the assessor's office, near the defendant's last known location[.]'" *Id.*

Some courts throughout the country, including in this District, have completely ignored and/or chosen not to apply the "reasonable diligence" standard and have held that a defendant's address is unknown simply by acknowledging the impossibility of serving foreign defendants without reliable physical addresses.  For example, in *Dama S.P.A. v. Does*, No. 15 Civ. 4528 (RJS), 2015 U.S. Dist. LEXIS 178076 (S.D.N.Y. June 15, 2015), Judge Sullivan granted the plaintiff's request to serve online infringers based in China via email, agreeing with the plaintiff's argument that because the defendants used false names and addresses, electronic service was the only viable option. *Id.* (citing *Burberry Ltd., et al., v. Burberry–Scarves.com, et al.*, No. 10 Civ. 9240 (TPG), at Dkt. No. 10 (S.D.N.Y. Dec. 29, 2010) and *Chanel Inc. v. Cui*, No. 10 Civ. 1142 (PKC), at Doc. No. 11 (S.D.N.Y. May 3, 2010)).  In 2019, in *WowWee Grp. Ltd. v. Haoqin*, No. 17 Civ. 9893 (WHP), 2019 U.S. Dist. LEXIS 48408 (S.D.N.Y. Mar. 22, 2019) ("*WowWee Grp.*"), Judge Pauley expressly held that service by plaintiff on anonymous merchants on Wish, who were selling counterfeit goods largely out of China was appropriate. *WowWee Grp.*, 2019 U.S. Dist. LEXIS 48408, at *2.  In reaching his decision, Judge Pauley stressed that because the defendants were e-commerce sellers that consist of usernames and corresponding email addresses, there was a "practical inability to reach such elusive Defendants by traditional methods" that justified the Court's authorization of service via electronic means. *Id.*  More recently, in *FoxMind Canada Enterprises Ltd. v. Abctec, et al.*, No. 21 Civ. 5146 (KPF) (S.D.N.Y. July 14, 2022), Judge Failla chose to apply the reasonable diligence standard, and found that under the circumstances of that case, which, like here, "include a suit against a voluminous number of defendants operating online

storefronts, a significant portion of whom posted demonstrably incurred address information in a space where false information is known to abound", the plaintiff, who engaged in similar investigative efforts as Plaintiffs, had exercised reasonable diligence. Transcript of July 14, 2022 Telephone Conference, 19:8-19:12, a copy of which is attached to the Nastasi Dec. as Exhibit C. In holding as such, Judge Failla noted that "[t]he Court does not believe that the law compels plaintiff to attempt to effectuate service under the Hague Convention using address information that it has a reasoned basis to believe [] [is] faulty." *Id.* at 18:6-18:10.

Here, as detailed in the Nastasi Dec., to the extent the reasonable diligence standard applies, Plaintiffs, through their counsel, have made sufficient efforts to discover the physical addresses of Defendants in this action. During Epstein Drangel's investigation, it compiled a list of Defendants' addresses as displayed on Defendants' Merchant Storefronts. (Nastasi Dec. at ¶ 29). Epstein Drangel sent the list of Defendants' addresses to Epstein Drangel's Beijing office, which performed this investigation via three (3) Chinese search engines for providing company registration information.[16] *Id.* at ¶¶ 31-34. Further, Epstein Drangel's Bejing office attempted to retrieve phone numbers associated with the addresses. *Id.* at ¶ 34. For any Defendants which Epstein Drangel's Beijing office determined it had potentially accurate addresses for, in an effort to test the veracity of such addresses, Epstein Drangel's Beijing office mailed test documents via Yunda Express ("Test Mailings") to the respective Defendants to attempt, as discussed below. *Id.* at ¶¶ 36-38. From this search, Epstein Drangel's Beijing office was able to confirm that of the thirty-eight (38) Defendants in this action, one (1) Defendant, Game Park Store, displays an address that appears to be accurate, but ultimately does not have enough identifying information (i.e., a phone number) to send Test Mailings to the addresses; two (2) Defendants display addresses

---

[16] Epstein Drangel's Beijing office used baidu.com, QiChaCha, i.e. qcc.com and the National Enterprise Credit Information Publicity System (https://www.gsxt.gov.cn/index.html) to investigate Defendants' displayed addresses.

that appear to be accurate and had enough additional identifying information to send Test Mailings to the addresses, however, the deliveries of Test Mailings were unsuccessful;[17] and thirty-five (35) Defendants display addresses that appear to be accurate and had enough additional identifying information to send Test Mailings to the addresses (i.e., a phone number connected to the addresses), all of which were successfully delivered.[18] *Id.* at ¶ 38. However, even sending and/or successfully delivering Test Mailings does not guarantee with any certainty that the person and/or entity who may have received the mail service is the Defendant given the motivation and propensity for counterfeiters, like Defendants, to conceal their true identities and whereabouts. *Id.* at ¶¶ 16, 45. Plaintiffs' inability to successfully send and/or deliver Test Mailings many of the Defendants' addresses via Yunda Express, and inability to confirm with certainty whether, for those Test Mailings that were successfully delivered, the intended recipient even received the Test Mailings, shows that if Plaintiffs attempt service via the Hague, it will likely be largely unsuccessful.

Accordingly, despite Plaintiffs' reasonable diligence in attempting to confirm the accuracy of Defendants' physical addresses, Plaintiffs' counsel was unable to locate true and correct and/or testable addresses for at minimum three (3) of the Defendants, and regardless cannot confirm with any certainty that the thirty-five (35) addresses it was able to send test documents to are the locations of the correct person or entity to be served given the motivation and propensity for counterfeiters, like Defendants, to conceal their true identities and whereabouts. *See, e.g., Kelly*

---

[17] Defendants aganv and Baby Accessories Baby accessories Store Store.

[18] BabeLeMi Store, Carol Monkey Baby Official Store, Childhood Toy Store, ChildhoodMemory Store, CubeIn store, CubeKK Store, Droxma Store, Fashionistar Store, HelloCube Store, Jeneey International Trade Co., Ltd., Jinhua Yifan Arts And Crafts Co., Ltd., Kidlove Store, LAZA Toys Store, left magic Official Store, Little Prince Store, ModernBaby Store, Mommy Baby eshopping Store, Ningbo Royal Import And Export Co., Ltd., Panda Home Store, Puzzles Store, QY Toys Store, Saiker Store, Shantou Tomness Trading Co., Ltd., Shop1341109 Store, Shop2947271 Store, Shop910554234 Store, Smiling Toy Store, TAOAO TQQ BABY Store, Toy Room And Baby Store, Toyshouse Store, WZ Puzzles Store, Yiwu Jianyu Imp & Exp Co., Ltd., Yiwu Jixu Import And Export Co., Ltd., Yiwu Tuoying Technology Co., Ltd. and ZCUBE Official Store.

*Toys Holdings*, 2022 U.S. Dist. LEXIS 154175, at *21 (holding plaintiff was not required to hire a private investigator in China to verify whether a physical address associated with a domain name is in fact authentic and that the extensive and multi-dimensional efforts taken established plaintiff exercised reasonable diligence in attempting to discover a physical address for service of process) (internal citations omitted); *Philip Morris USA Inc. v. Veles Ltd.*, No. 06 Civ. 2988 (GBD), 2007 U.S. Dist. LEXIS 19780, at *1, *3 (S.D.N.Y. Mar. 12, 2007) (approving service of online retailers by email and fax, where service by mail to listed physical addresses had been attempted but was returned, and where email addresses and fax numbers appeared operational); *Advanced Access*, 2018 U.S. Dist. LEXIS 169603, at *4 (finding efforts reasonably diligent, and approving service by email, where plaintiff "investigat[ed]" the physical addresses associated with Chinese online retailer's domain names, searched the internet, "called known phone numbers, and conducted in-person visits where reasonable"); *Prediction Co. v. Rajgarhia*, No. 09 Civ. 7459 (SAS), 2010 U.S. Dist. LEXIS 26536, at *2 (S.D.N.Y. Mar. 22, 2010) (finding plaintiff's address was "not known," and that the Hague Convention was thus inapplicable, where plaintiff had "actively, though unsuccessfully, attempted to obtain [Indian defendant's] address in a variety of ways").

### b) *Service on Defendants Is Permissible Under Fed. R. Civ. P. 4(f)(3)*

Regardless of the applicability of the Hague, Plaintiffs respectfully submit that alternative service is proper. Plaintiffs acknowledge that both the U.S. and China are signatories to the Hague; however, Plaintiffs respectfully submit that alternative service pursuant to Fed. R. Civ. P. 4(f)(3) is particularly appropriate here based on the exigent circumstances surrounding Plaintiffs' Application. *Celgard, LLC v. Shenzen Senior Tech. Material Co.*, No. 3:20-cv-130-GCM, 2020 U.S. Dist. LEXIS 89487, at *8-9 (W.D.N.C. May 20, 2020) (Plaintiffs may request service via email in cases of emergency per the Hague). Rule 4(f)(3) allows service *by other means* than those internationally agreed upon, so long as they are not specifically prohibited by international

agreement. *Id.* Thus, under Rule 4(f)(3), Plaintiff may request service via email—which, as addressed in further detail below, is not prohibited by the Hague or otherwise—regardless of whether the Hague is applicable.

By its terms, the decision whether to authorize alternative service under Rule 4(f)(3) is left to the Court's discretion. *See Elsevier, Inc. v. Siew Yee Chew*, 287 F. Supp. 3d 374, 377 (S.D.N.Y. 2018) "Where service may be authorized by Rule 4(f)(3), Plaintiff need not attempt, and courts need not give preference to, means of service under Rule 4(f)(1) or 4(f)(2). *Zuru (Singapore) PTE., Ltd. v. Individuals, Corps., Ltd. Liab. Cos., P'ships, & Unincorporated Ass'ns Identified on Schedule A Hereto*, 22 Civ. 2483 (LGS), 2022 U.S. Dist. LEXIS 195268, at *2 (S.D.N.Y. Oct. 26, 2022) (citing *Restoration Hardware, Inc. v. Lighting Design Wholesalers, Inc.*, No. 17 Civ. 5553 (LGS), 2020 U.S. Dist. LEXIS 228149, at *4 (S.D.N.Y. Dec. 4, 2020) (noting that "Rule 4(f) is not hierarchical" and service may be authorized under Rule 4(f)(3) "even if the method of service is in contravention of the laws of the foreign country" and thus precluded under 4(f)(2)); *see also Sulzer Mixpac AG v. Medenstar Indus. Co.*, 312 F.R.D. 329, 330 (S.D.N.Y. 2015) ("[s]ervice under subsection [4(f)] (3) is neither a last resort nor extraordinary relief. It is merely one means among several which enables service of process on an international defendant.").  Although compliance with the Hague is required when it is applicable, and as such, a court is "'prohibited from issuing a Rule 4(f)(3) order in contravention of ... the Hague'. . .the Ninth Circuit [among other circuits, as noted herein] has rejected the contention that Rule 4(f)(3) can only be utilized if other methods of service have failed or been shown to be unduly burdensome." *Victaulic Co. v. Allied Rubber & Gasket Co.*, No. 3:17-cv-01006-BEN-JLB, 2020 U.S. Dist. LEXIS 82150, at *6-7 (S.D. Cal. May 8, 2020) (citing *Rio Properties, Inc.*, 284 F.3d at 1016).  In finding alternative service was proper on Chinese defendants, the Fifth Circuit recently confirmed, even where the Hague does apply,

"[s]ervice pursuant to the Hague Convention listed in subjection (f)(1), does not displace subsection (f)(3), which permits service by other means." *Viahart, L.L.C. v. GangPeng*, No. 21-40166, 2022 WL 445161, at *3 (5th Cir. Feb. 14, 2022).  Most recently, the Federal Circuit, on appeal from the District Court similarly found that no blanket requirement exists to attempt service by conventional means before alternative service is permitted. *Hudson Furniture, Inc. v. Mizrahi*, No. 2022-1290, 2022 U.S. App. LEXIS 31590, at *6-7 (Fed. Cir. Nov. 16, 2022).

### 1) The Exigent Circumstances Present Here Justify Alternative Service

Plaintiffs respectfully submit that the exigencies present here justify service via alternative means.  First, the plain language of Article 15 of the Hague states, "[n]otwithstanding the provisions of the preceding paragraphs the judge may order, in case of urgency, any provisional or protective measures." Hague, Art. 15; *see also Genus Lifesciences Inc. v. Tapaysa Eng'g Works Pvt. Ltd.,* No. 20-CV-3865, 2021 U.S. Dist. LEXIS 76291, at *9 (E.D. Pa. Mar. 10, 2021).  Second, the Advisory Committee notes to Fed. R. Civ. P. 4 specifically contemplate Rule 4(f)(3)'s use as an alternative to compliance with the Hague.[19]  The 1993 Advisory Committee Notes to Fed. R. Civ. P. 4 state, in relevant part, the following:

> The Hague Convention, for example, authorizes special forms of service "in cases of urgency if convention methods will not permit service within the time required by the circumstances. Other circumstances that might justify the use of additional methods include the failure of the foreign country's Central Authority to effect service within the six-month period provided by the Convention . . . . In such cases, the court may direct a special method of service not explicitly authorized by international agreement if not prohibited by the agreement. Inasmuch as our

---

[19] Plaintiff respectfully submits that the Court's conclusion in *Smart Study Co. v. Acuteye-Us*, No. 21 Civ. 5860 (GHW), 2022 WL 2872297 (S.D.N.Y. July 21, 2022) (hereinafter "*Smart Study*"), that "the Court need not determine whether the request was truly urgent because it does not matter. There is no exigent circumstances exception in Rule 4(f)(3)" (*Smart Study*, 2022 WL 2872297 at *27) is directly belied by the 1993 Advisory Committee noted to Fed. R. Civ. P. 4.  Additionally, Plaintiff submits that the Court's conclusion in *Smart Study*'s finding service by email on Chinese defendants does not comply with Fed. R. Civ. P. 4 or the Hague Convention is so broad as to prevent an American plaintiff from being able to sue and effectively serve a Chinese defendant in numerous circumstances, particularly Chinese defendants like the counterfeiters in this case, having the motivation and propensity to conceal their identities and locations and/or display false information regarding their identities and whereabouts.

> Constitution requires that reasonable notice be given, an earnest effort should be
> made to devise a method of communication that is consistent with due process and
> minimizes offense to foreign law.

Fed. R. Civ. P. 4, Advisory Committee Notes, 1993 amendments.[20]  In line with the Advisory

Committee notes, recently, in an opinion read on the record in *FoxMind Canada Enterprises*, Judge

Failla found that the exigencies existing in that particular case counseled in favor of alternative

service.  Judge Failla held as follows:

> Here the Court concludes that alternative service was necessary on the
> circumstances of this case.  Although plaintiff did not attempt to serve the moving
> defendants before seeking alternative service, the Court has already explained that
> plaintiff harbored reasonable doubts about the veracity of the addresses affiliated
> with their Amazon user accounts.  The Court, therefore, does not believe it
> appropriate to institute a requirement that plaintiff attempt service under the Hague
> Convention using information that it had reason to believe was erroneous. . .Beyond
> the questionable authenticity of these addresses, there were also the exigencies of
> the case, which counsel, in favor of alternative service, plaintiff initiated this suit
> on an emergency posture picking an ex parte TRO in the hopes of immediately
> thwarting the sale of allegedly counterfeit goods on online marketplaces.  Any other
> strategy for instituting this action would have afforded the alleged counterfeiters an
> opportunity to evade enforcement of the trademark laws, thus obviating the release
> sought by plaintiff before the Court and before this Court had…a chance…to
> consider the merits of the claims.

Transcript of July 14, 2022 Telephone Conference, 21:11-22:10, Nastasi Dec. as Exhibit C.

Several federal district courts have likewise held that alternative service is appropriate

where, as here, Plaintiffs have demonstrated exigent circumstances justifying the urgent injunctive

relief sought herein, making a quick and effective means of service necessary to prevent further

irreparable harm to Plaintiffs. *See e.g., Equipav S.A. Pavimentação, Engenharia e Comercia Ltda.

v. Bertin*, No. 22-CV-04594 (PGG), 2022 WL 2758417, at *5 (S.D.N.Y. July 14, 2022) ("As to

whether this Court's intervention is necessary, courts in this District have found that lengthy delays

---

[20] The Supreme Court in *Water Splash*, noted that where an ambiguity in a treaty exists, "[t]hree extratextual sources
are especially helpful…the Convention's drafting history, the views of the Executive, and the views of other
signatories." *Water Splash*, 137 S. Ct. at 1511.

in service under the Hague Convention are sufficient to show that alternative service under Rule 4(f)(3) is warranted." (citing cases)); *Asia Cube Energy Holdings, LTD v. Inno Energy Tech Co.*, No. 20-cv-6203 (AJN), 2020 U.S. Dist. LEXIS 148012, at *10 (S.D.N.Y. Aug. 17, 2020) ("[Plaintiff's] pursuit of emergency relief bears on the question of whether judicial approval of alternative means of service is warranted"); *Strabala v. Zhang*, 318 F.R.D. 81, 114 (N.D. Ill. 2016) ("Court-directed service pursuant to Rule 4(f)(3) is appropriate when, for example, 'there is a need for speed that cannot be met by following the Hague Convention methods. . . .'") (internal quotation omitted); *Aircraft Engine Lease Finance, Inc. v. Plus Ultra Lineas Aereas, S.A.*, 21 Civ. 1758, 2021 WL 6621578, at *1 (S.D.N.Y. Apr. 23, 2021) ("[B]ecause service through the Hague Convention would unnecessarily delay this case, the Court finds that intervention is necessary."); *In re GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. 262, 266 (S.D.N.Y. 2012) ("Courts have frequently cited delays in service under the Hague Convention as supporting an order of alternative service under Rule 4(f)(3)."). Similarly, in *NBA*, the court held "[a] speedy method of service…was justified to ensure, among other reasons, that the funds gained by the allegedly infringing conduct would be recoverable." *NBA Props. v. P'ships & Unincorporated Ass'ns*, 549 F. Supp. 3d 790, 797 (N.D. Ill. 2021), citing *Strabala*, 318 F.R.D. at 114, quoting 4B FED. PRAC. & PROC. CIV. § 1134 (4th ed.).

### 2)  <u>Service by Electronic Means is Not Prohibited by the Hague</u>

Fed. R. Civ. P. 4(f)(3) enables a court to grant an alternative method of service so long as it: "(1) is not prohibited by international agreement; and (2) comports with constitutional notions of due process." *SEC v. Anticevic*, No. 05 CV 6991 (KMW), 2009 WL 361739, at *7 (S.D.N.Y. Feb. 8, 2009) citing Fed. R. Civ. P. 4(f)(3). Despite the Court's holding to the contrary in *Smart Study*, the alternative service requested by Plaintiffs herein (i.e., service by electronic means), is not prohibited by any international agreement. As detailed further below, this has been confirmed

by *Advanced Access Content Sys.*, 2018 U.S. Dist. LEXIS 169603.  Moreover, while *Smart Study*

suggests that the holding in *Water Splash, Inc. v. Menon,* 137 S. Ct. 1504, 1505 (2017) "indicated"

that the only permissible methods of service are those "specified" in the Hague, many courts have

opined that, "the Convention neither authorizes nor prohibits service by email—it is entirely silent

on the issue." *NBA Props. v. P'ships & Unincorporated Ass'ns*, 549 F. Supp. 3d 790, 797 (N.D.

Ill. 2021) (citing *MacLean—Fogg Co. v. Ningbo Fastlink Equip. Co.*, No. 08 CV 2593, 2008 WL

5100414, at *2 (N.D. Ill. Dec. 1, 2008); *Sulzer Mixpac*, 312 F.R.D. at 331; *Ouyeinc Ltd. v. Alucy*,

No. 20 C 3490, 2021 WL 2633317, at *3 (N.D. Ill. June 25, 2021)).

### 3)  China's Objection to Article 10(a) Does Not Constitute an Objection to Service by Email

Despite China's objection to service by postal channels under Article 10, China's

governing bodies (i.e. the National People's Congress and its Standing Committee) have not made

any interpretations regarding whether the reservation to Article 10(a) includes email and this

Court, along with many others, has held that such objection does not include service by email[21]

and further, that service by email is not prohibited by any international agreement.[22] *See, e.g.*

*Equipav S.A.*, 2022 U.S. Dist. LEXIS 124987, at *5 (finding that the Hague does not prohibit

service via e-mail despite the fact that Brazil has objected to Article 10 of the Hague regarding

service by mail); *ShelterZoom Corp. v. Goroshevsky*, 19-cv-10162 (AJN), 2020 WL 4252722, at

---

[21] U.S. Courts have also found that since China allows its own courts to "order service of Chinese process by email on defendants outside China, it cannot credibly object to U.S. courts ordering the same on defendants located in China". *See Hangzhou Chic Intelligent Tech. Co. v. P'ships & Unincorporated Ass'n Identified on Schedule A*, No. 20 C 4806, 2021 WL 1222783, at *11-12 (N.D. Ill. Apr. 1, 2021) ("Chinese law permits its courts to order service by email on a party outside of China, in part because email permits the person to be served to 'acknowledge' receipt." *See id.* at 8 (p. 47, Article 267) ("A people''s court may serve procedural documents on a party without a domicile within the People's Republic of China in the following ways: . . . Service by . . . e-mail and any other means through which the receipt of the document may be acknowledged."); *see also Chanel, Inc. v. Handbagstore*, No. 20-CV-62121-RUIZ/STRAUSS, 2021 WL 3060329, at *25-30 (S.D. Fla. June 30, 2021); *see also Smart Study*, Dkt. 98 at ¶ 11.

[22] International law, not foreign law, is the relevant law for an analysis under Rule 4(f)(3). *See Restoration Hardware, Inc. v. Lighting Design Wholesalers, Inc.*, 2017 WL 11509784, at *23 (S.D.N.Y. 2020) (noting that "Rule 4(f)(3) does not require a finding that the method of service ordered is permitted under foreign law.").

*2 (S.D.N.Y. July 23, 2020) ("[N]umerous courts have held that service by email does not violate any international agreement, even when a country objects to Article 10 of the Hague Convention[.]" (quotation marks and citation omitted)); *Grp. One Ltd. v. GTE GmbH*, 523 F. Supp. 3d 323, 343 (E.D.N.Y. 2021) ("Courts in the Second Circuit have generally found that email is not a postal channel and that service by email is authorized if the signatory country has not explicitly objected to service by electronic means.") (collecting cases); *Doe v. Hyassat*, 342 F.R.D. 53 (S.D.N.Y. 2022) ("Although Austria has objected to Article 10(a) of the Hague Service Convention — which permits service via 'postal channels' — such an objection does not extend to service via email.") (citing *F.T.C. v. Pecon Software Ltd.*, No. 12-cv-7186 (PAE), 2013 U.S. Dist. LEXIS 111375, at *5 (S.D.N.Y. Aug. 7, 2013) ("Numerous courts have held that service by email does not violate any international agreement where the objections of the recipient nation are limited to those means enumerated in Article 10." (citations omitted)); *Bandyopadhyay v. Defendant 1*, No. 22-cv-22907-BLOOM/Otazo-Reyes, 2022 U.S. Dist. LEXIS 212221 (S.D. Fla. Nov. 22, 2022) (noting that "[w]here a signatory nation has objected to the alternative means of service provided by the Hague Convention, that objection is expressly limited to those means and does not represent an objection to other forms of service, such as e-mail or website posting", and finding service via NFT and posting on a designated website was permissible on Chinese defendants); *see also, e.g. Sulzer*, 312 F.R.D. at 332; *Anova Applied Elecs., Inc. v. Hong King Grp., Ltd.*, 334 F.R.D. 465, 471 (D. Mass. 2020); *The Neck Hammock, Inc v. Danezen.com*, 2020 WL 6364598, at *4 (D. Utah Oct. 29, 2020); *Smart Study*, Dkt. 98. In *Luxottica Grp. S.p.A. v. P'ships, et al.*, 391 F. Supp. 3d 816 (N.D. Ill. 2019) the court disagreed with this Court's holding in *Sulzer*, finding China's objection to service via postal channels is an objection to service by email in reliance on *Water Splash*. Yet, on a motion for reconsideration, the *Luxottica* court

conceded that the Supreme Court did not "conclusively settle the precise questions" because neither *Water Splash* nor *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694 (1988) involved Rule 4(f)(3) or e-mail service. *Luxottica Grp. S.p.A. v. P'ships, et al.*, 18 Civ. 2188, 2019 WL 2357011, at *3 (N.D. Ill. June 4, 2019); *see also In re Bibox Grp. Holdings Sec. Litig.*, No. 20cv2807(DLC), 2020 WL 4586819, at *5 (S.D.N.Y. Aug. 10, 2020) ("Service by email or social media are not among those listed in Article 10. Courts have understood objections to the alternative channels of service in Article 10 to be limited to the methods specifically enumerated therein."); *see also Smart Study*, Dkt. 98.

Moreover, Plaintiffs further respectfully submits that an analysis of Chinese law is irrelevant here for purposes of Rule 4(f)(3). In *Advanced Access Content*, where the defendant argued that email service violated the laws of China, this Court held "[e]ven if true, the fact that email service does not comport with Chinese law or instructions from the Chinese government under the Hague Convention is inapposite to the Rule 4(f)(3) inquiry, which, requires only that service is not prohibited by international agreement." 2018 U.S. Dist. LEXIS 169603 at *13; *see also, Rio Props, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002) ("As obvious from its plain language, service under Rule 4(f)(3) must be (1) directed by the court; and (2) not prohibited by international agreement," and "no other limitations are evident from the text."); *see also Smart Study*, Dkt. 98 at ¶ 11.

## 2. <u>Service by Electronic Means Comports with Due Process</u>

Service on Defendants by electronic means also comports with due process, as it is "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 309 (1950); *see also Zanghi v. Ritella*, 2020 WL 589409, at *6 (S.D.N.Y. Feb. 5, 2020) (judicial approval of service via email is generally supported by facts

indicating that the person to be served will likely receive the documents); *Pearson Educ. Inc. v. Doe 1*, 18-CV-7380, 2019 WL 6498305, at *3 (S.D.N.Y. Dec. 2, 2019) ("Email service has also repeatedly been found by courts to meet the requirements of due process." (internal citation omitted). This Court held the bar is met where, as here, Defendants engaged in online business and regularly communicated with customers via email. *Mattel, Inc. v. Animefunstore, et al.*, 18 Civ. 8824 (LAP) (Dkt. 81) (S.D.N.Y. May 1, 2020); *see also Sulzer*, 312 F.R.D. at 332 (service through email was appropriate where the "email address in question is listed prominently on [defendant's internet homepage…[,] [the defendant] presumably relies at least partially on contact through [its email] to conduct overseas business, and it is reasonable to expect [defendant] to learn of the suit against it through this email address."); *Kaneka Corp.*, 2017 WL 11509784 at *9 (email service appropriate where defendant conducted its business through email."). Moreover, in *NBA*, the court held that "email was a more reliable method of service…because Defendant's email address was verified by the sales platform, while their physical addresses were not." *NBA Props.*, 549 F. Supp. 3d at 797; *see also Restoration Hardware, Inc.*, 2017 WL 11509784, at *23 (finding that in light of the evidence that the defendant was associated with certain electronic email accounts, due process was "easily satisfied"); *see also*, *Ouyeinc Ltd.*, 2021 WL 2633317, at *3 ("courts have routinely upheld service by email" in infringement actions where online stores' "business appeared to be conducted entirely through electronic communications"). Accordingly, Plaintiffs respectfully submit that service by email under Rule 4 is the most effective means to ensure Defendants are reasonably apprised of this action.[23]

---

[23] To the extent the Court requires Plaintiffs to attempt service on some or all Defendants via the Hague, Plaintiffs respectfully submit they are entitled to an extension of any Temporary Restraining Order entered in this action until service on Defendants is completed. Pursuant to Fed. R. Civ. P. 65(b)(2), a district court may extend a TRO "for good cause". Fed. R. Civ. P. 65(b)(2). *See e.g., Trs. of Columbia Univ. v. Encyclopaedia Iranica Found.*, 2020 U.S. Dist. LEXIS 155031, at *3 (S.D.N.Y. Aug. 26, 2020) (extending a TRO until after the submission of the parties' post-hearing briefs, because such time will allow the Court to consider the parties' submissions, and because the extension is supported by the reasons stated in the Court's decision granting the TRO) (citing *In re Criminal Contempt*

### 3. **Epstein Drangel's Prior Hague Service Attempts Support the Propriety of Alternative Service Under the Circumstances**

Further, the propriety of alternative service is supported by Plaintiffs' counsel's experience in attempting to effect service via the Hague in cases similar to the instant one. More specifically, between February and May of 2023, Epstein Drangel began the process of serving a total of ninety-three (93) defendants across four (4) different cases through the Hague. (Nastasi Dec., ¶ 42). As of the date of this Application, service by the Chinese Central Authority has only been attempted on thirty (30) defendants across only two (2) of the four (4) cases, and only six (6) of those thirty (30) defendants were successfully served. *Id.* at ¶ 43. Epstein Drangel was told that the service failed for various reasons, including but not limited to that the addresses, which Epstein Drangel's Beijing office, through its diligence, confirmed as connected to the respective defendants, were in fact not occupied by or connected to the defendants, but rather, other unrelated persons or entities.[24] *Id.* at ¶ 44. Epstein Drangel's inability to successfully serve several defendants via the Hague addresses which it was confident were accurate and connected to defendants' respective merchant storefronts underscores that if Epstein Drangel continues to rely on counterfeiters' merchant storefront addresses, Hague service across cases similar to the present action will likely be largely unsuccessful. *Id*. at ¶ 45.

According to the Civil Procedure Law of the People's Republic of China, Part 1, Chapter 7, Section 2, Article 79[25], which governs service where the recipient refuses to accept the

---

*Proceedings Against Gerald Crawford, Michael Warren*, 329 F.3d 131, 136-39 (2d Cir. 2003) (holding that a TRO, extended for good cause pending resolution of preliminary injunction proceedings was a valid basis for appellants' contempt convictions). Moreover, to the extent the Court requires Plaintiffs to attempt service via the Hague, Plaintiffs further propose providing Defendants with notice of the lawsuit via e-mail prior to the completion of the Hague service.

[24] By way of example, for one address, the individuals who reside at the address told the judges who were sent to effectuate service that they had no relationship with defendant's company, do not know any person from the company and further stated that they do not rent space to the defendant company. As another example, the legal representative of a company at another address refused to accept service.

[25] *See* Wei Luo, The Civil Procedure Law and Court Rules of the People's Republic of China 62 (2006) ("If the person on whom the litigation documents are to be served or the adult family member living with him refuses to receive the

documents, for service under the Hague to be proper, the defendant to be served or, if service is refused by defendant, a proper representative must provide a signature, or a failure of service will result. *Samsung Elec. Co., Ltd. v. Early Bird Sav.*, No. 13 Civ. 3105 (BEN), 2014 U.S. Dist. LEXIS 141233 *6-7 (S.D. Cal., Oct. 1, 2014). Epstein Drangel's inability to successfully serve several defendants via the Hague at addresses that it was confident were accurate and connected to the defendants' respective merchant storefront shows that if Epstein Drangel continues to rely on counterfeiters' addresses listed on their websites or storefronts, Hague service across cases similar to this action has the potential to be largely unsuccessful. Thus, even where, as here, some of the Defendants' addresses appear to be potentially accurate, it is highly likely that service via the Hague could be unsuccessful. Further, Epstein Drangel's experience with Hague service via the Central Authority thus far shows that if Plaintiffs attempt service via the Hague, it will take longer than the anticipated six (6) months.

### E. DEFENDANTS ARE PROPERLY JOINED IN THIS ACTION PURSUANT TO FED. R. CIV. P. 20(A)(2)

Rule 20(a)(2) permits the joinder of multiple defendants in a single action if two criteria are met: (1) the claims "aris[e] out of the same transaction, occurrence, or series of transactions and occurrences"; and (b) "any questions of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). What will constitute the same transaction or occurrence under the first prong of Rule 20(a) is approached on a case-by-case basis. *Kehr v. Yamaha Motor Corp.*, No. 09-CV-7379 (CM), 596 F. Supp. 2d 821, 826 (S.D.N.Y. 2008). Courts construe Rule 20(a) broadly "to enable the court to promote judicial economy by permitting all reasonably related

---

documents, the person serving the documents shall ask representatives from the relevant grass-roots organization or the unit to which the person on whom the documents are to be served belongs to appear on the scene, explain the situation to them and record on the receipt the reasons of the refusal and the date of it. After the person serving the documents and the witnesses have affixed their signatures or seals to the receipt, the documents shall be left at the place where the person on whom they are to be served lives and the service shall be deemed completed.").

claims for relief by or against different parties to be tried in a single proceeding." *Viada v. Osaka Health Spa, Inc.*, No. 04-CV-2744 (VM)(KNF), 235 F.R.D. 55, 61 (S.D.N.Y. 2006) (citing *A.I.A. Holdings, S.A. v. Lehman Bros.*, No. 97-CV-4978 (LMM), 1998 U.S. Dist. LEXIS 4175, at *19 (S.D.N.Y. April 1, 1998)).

Here, Plaintiffs respectfully submit that its claims against the Defendants arise out of the same series of transactions and occurrences. Namely, Defendants each infringed one or more of Plaintiffs' Rubik's Cube Marks in their Counterfeit Products offered for sale and/or sold on Alibaba and/or AliExpress. (Nastasi Dec., ¶ 22). Further, in Epstein Drangel's experience, many of the Defendants may be related and/or share a common owner. *Id.* at ¶ 19. Defendants' Merchant Storefronts share unique identifiers, such as design elements along with similarities in price, description of the goods offered and of the Counterfeit Products themselves offered for sale and through visual inspection of the evidence collected by Epstein Drangel which shows that some of the Defendants use the same or similar images for their Infringing Listings. *Id.*

As this Court has found in nearly identical cases, joinder is appropriate in cases involving the sale of counterfeit products (infringing and/or counterfeiting the same intellectual property) on e-commerce platforms by multiple China-based defendants in the interest of judicial economy and where plaintiff has established a strong likelihood that many of the defendants have engaged in coordinated actions or share ownership. *Id.* at ¶¶ 19-20; *see Golden Goose Deluxe Brand v. Aierbushe et al.*, No. 19-cv-2518 (VEC), 2019 U.S. Dist. LEXIS 84639, at *1 (S.D.N.Y. May 3, 2019); *WowWee Grp. Ltd., et al. v. Meirly, et al.,* No. 18-cv-706 (AJN), 2019 U.S. Dist. LEXIS 51905, at *14 (S.D.N.Y. Mar. 27, 2019).[26] Accordingly, Plaintiffs respectfully submit that Defendants are properly joined in this action pursuant to Fed. R. Civ. P. 20(a)(2).

---

[26] Plaintiffs will promptly provide supplemental briefing should the Court request it.

## F.  PLAINTIFFS ARE ENTITLED TO AN ORDER AUTHORIZING EXPEDITED DISCOVERY

Additionally, Plaintiffs respectfully request that the Court order expedited discovery from Defendants, Financial Institutions and Third Party Service Providers regarding the scope and extent of Defendants' counterfeiting and infringing activities, as well as Defendants' account details and other information relating to Defendants' Financial Accounts, Assets and/or any and all User Accounts and or Financial Accounts with the Third Party Service Providers, including, without limitation any and all websites, any and all User Accounts and any and all Merchant Storefronts, including, without limitation, those owned and operated, directly or indirectly, by the Third Party Service Providers and the Financial Institutions.

Generally, a party may not seek discovery prior to a Rule 26(f) conference unless authorized by a court order. Fed. R. Civ. P. 26(d)(1).  In the past, Courts in this District have often applied a four-factor test to determine when expedited discovery may be granted,[27] but now apply a more flexible "good cause" test to examine "the discovery request . . . on the entirety of the record to date and the *reasonableness* of the request in light of all the surrounding circumstances." *Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 326 (S.D.N.Y. 2005) (internal citation omitted).  Regardless of which test, Plaintiffs have established that it is entitled to the expedited discovery requested for good cause shown.  *See id*. at 327.

## G.  PLAINTIFFS' REQUEST FOR A SECURITY BOND IN THE AMOUNT OF $5,000 IS ADEQUATE

In determining the amount of the bond that a moving party must post, this Court is "vested with wide discretion." *Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996).  Plaintiffs respectfully submit the provision of security in the amount of $5,000 is sufficient. *Rovio*

---

[27] *See Advanced Portfolio Techs., Inc. v. Advanced Portfolio Techs., Ltd.*, No. 94 Civ. 5620 (JFK), 1994 U.S. Dist. LEXIS 18457, at *7 (S.D.N.Y. Dec. 28, 1994).

*Entertainment Ltd. and Rovio Animation OY v. Best Baby and Kid Store, et al.*, No. 17-cv-4884-KPF (S.D.N.Y. June 28, 2017).[28]

## IV.    CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that their Application be granted *ex parte* in its entirety.

Dated:  May 23, 2024

Respectfully submitted,

EPSTEIN DRANGEL LLP

BY:
    Gabriela N. Nastasi
    gnastasi@ipcounselors.com
    Jason M. Drangel (JD 7204)
    jdrangel@ipcounselors.com
    Ashly E. Sands (AS 7715)
    asands@ipcounselors.com
    Danielle S. Futterman (DY 4228)
    dfutterman@ipcounselors.com
    Grace A. Rawlins
    grawlins@ipcounselors.com
    60 East 42nd Street, Suite 1250
    New York, NY 10165
    Telephone:     (212) 292-5390
    Facsimile:     (212) 292-5391
    *Attorneys for Plaintiffs*
    *Spin Master Ltd. and Spin Master*
    *Toys UK Limited*

---

[28] Moreover, this Court has gone as far as to hold that no security bond is necessary in similar circumstances. *See Mattel, Inc. v. 86755, et al.*, No. 18-cv-8825-RJS-JSR (S.D.N.Y. Oct. 4, 2018) (The Hon. Richard J. Sullivan held that no security bond was necessary because "it strikes me almost as fairly arbitrary.")